# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD.,**<br><br>*Plaintiffs*,<br><br>**v.**<br><br>**GOLABS, INC., d/b/a GOTRAX, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC,**<br><br>*Defendants*. | **Civil Action No. 3:20-CV-02023**<br><br><br>**JURY TRIAL DEMANDED** |
| **GOLABS, INC., d/b/a GOTRAX,**<br><br>*Counterclaimant*,<br><br><br>**v.**<br><br>**UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD.,**<br><br>*Counterdefendants*. | |

## DEFENDANT AND COUNTERCLAIMANT GOLABS'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AND THE WALMART DEFENDANTS ANSWER AND AFFIRMATIVE DEFENSES

Defendant and Counterclaimant Golabs, Inc., d/b/a Gotrax ("Golabs") hereby provides its

Answer, Affirmative Defenses And Counterclaims and Defendants Walmart Inc., Wal-mart Stores

Texas, LLC, and Wal-Mart.com USA LLC (collectively "Walmart" or "The Walmart

Defendants") hereby provide their Answer and Affirmative Defenses to the Original Complaint of

Plaintiffs and Counterdefendants Unicorn Global, Inc. ("Unicorn Global"), Hangzhou Chic Intelligent Technology Co., Ltd. ("Hangzhou Chic"), and Shenzhen Uni-Sun Electronic Co., Ltd. ("Shenzhen Uni-Sun") as follows[1]:

## <u>INTRODUCTION</u>

1.      Golabs and Walmart admit that the Original Complaint purports to state a claim for patent infringement and that 35 U.S.C. §101 et seq. relate to the patent laws of the United States. Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 1 of the Original Complaint.

2.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 2 of the Original Complaint, and on that basis deny the same.

3.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 3 of the Original Complaint, and on that basis deny the same.

4.      Paragraph 4 of the Original Complaint requires no response.

5.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 5 of the Original Complaint, and on that basis deny the same.

6.      Denied.

---

[1] Walmart intends to file a Motion to Sever and Stay this action as to the Walmart Defendants.  To the extent the Court grants Walmart's Motion to Sever and Stay, Walmart agrees to be bound by the Court's decisions regarding the validity, enforceability and infringement of the U.S. Patents Nos. 10,167,036 ("the '036 patent") and 10,597,107 ("the '107 patent") asserted by Plaintiffs and Counterdefendants.

## PARTIES

7.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 7 of the Original Complaint, and on that basis deny the same.

8.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 8 of the Original Complaint, and on that basis deny the same.

9.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 9 of the Original Complaint, and on that basis deny the same.

10.     Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 10 of the Original Complaint, and on that basis deny the same.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

## JURISDICTION AND VENUE

16.     Golabs and Walmart admit subject matter jurisdiction.

17.     Golabs admits that there is personal jurisdiction over Golabs in that its principal place of business is in this district.  Walmart is without knowledge or information sufficient to form a belief as to whether there is personal jurisdiction over Golabs.  Except as expressly admitted

by Golabs, Golabs and Walmart deny each and every allegation contained in paragraph 17 of the Original Complaint.

18.   Walmart admits that there is personal jurisdiction over Walmart, that Walmart has multiple stores in this District and in Texas, that Walmart has transacted business in this District involving the Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, Hoverfly XL, 654-2, and Remix products, that Walmart has employees in this District, and that Walmart has offered products, including the Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, Hoverfly XL products, 654-2, and Remix products for sale to customers and potential customers in this District and in Texas.  Except as expressly admitted by Walmart, Golabs and Walmart deny each and every allegation contained in paragraph 18 of the Original Complaint.

19.   Golabs, Walmart Inc., and Wal-mart Stores Texas, LLC admit venue is proper. Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 19 of the Original Complaint.

## ALLEGED INFRINGING PRODUCTS

20.   Golabs and Walmart admit that a patent that is issued by the United States Patent & Trademark Office is entitled to the presumption of validity under 35 U.S.C. §282.  Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 20 of the Original Complaint.

21.   Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 21 of the Original Complaint, and on that basis deny the same.

22.   Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 22 of the Original Complaint, and on that basis deny the same.

23.     Golabs and Walmart admit that the title of the asserted '036 patent is "Electric Balance Vehicle" and the asserted '107 patent is "Electric Vehicle."  Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 23 of the Original Complaint.

24.      Golabs denies each and every allegation contained in paragraph 24.  Walmart denies that the Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, XL, 654-2 and Remix are infringing products.  Walmart is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 24.

25.     Denied.

26.     Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 26 of the Original Complaint, and on that basis deny the same.

27.     Denied.

28.     Golabs admits that it sells and offers to sell the Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, Hoverfly XL, 654-2, and Remix products to customers through its website.  Walmart admits that it sells and offers to sell such products to customers, and Golabs and Walmart admit that they sell and offer to sell such products to customers in the United States, including Texas. Except as expressly admitted by Golabs and/or Walmart, Golabs and Walmart deny each and every allegation contained in paragraph 28 of the Original Complaint.

## KNOWLEDGE AND WILLFULNESS

29.     Golabs admits that it had knowledge of the '036 patent prior to the filing of the Original Complaint on July 30, 2020.  Walmart is without knowledge or information sufficient to form a belief as to whether Golabs had knowledge of the asserted patents prior to the filing of the

Complaint.  Except as expressly admitted by Golabs, Golabs and Walmart deny each and every allegation contained in paragraph 29 of the Original Complaint.

30.     Golabs and Walmart deny patent infringement, including denying any willful infringement. Walmart admits that it had knowledge of the '036 patent prior to the filing of the Original Complaint on July 30, 2020.  Golabs is without knowledge or information sufficient to form a belief as to whether Walmart had knowledge of the asserted patents prior to the filing of the First Amended Complaint.  Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30 of the Original Complaint, and on that basis deny the same.

31.     Golabs and Walmart admit knowledge of the asserted patents from service of the Original Complaint on July 30, 2020.  Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 31 of the Original Complaint.

32.     Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 32 of the Original Complaint, and on that basis deny the same.

**COUNT ONE**
**ALLEGED PATENT INFRINGEMENT**
**The '036 Patent**

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

6

## COUNT TWO
## ALLEGED PATENT INFRINGEMENT
### The '107 Patent

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

## JURY DEMAND

45.     Golabs and Walmart admit that Plaintiffs purport to have requested a jury trial of this action.

## PRAYER FOR RELIEF

46.     Golabs and Walmart deny any and all allegations contained in the remainder of the Original Complaint and deny that Plaintiffs are entitled to any of the relief requested in paragraphs (A) through (H) of the prayer for relief or to any other relief in any form whatsoever.

## AFFIRMATIVE DEFENSES

As separate affirmative defenses to the Original Complaint, Golabs and Walmart allege as follows:

### FIRST AFFIRMATIVE DEFENSE – NONINFRINGEMENT

47.     Golabs and Walmart do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale or imported into the United States any products that infringe any valid and enforceable claim of the '036 and '107 patents, either willfully, directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise.

## SECOND AFFIRMATIVE DEFENSE – INVALIDITY

48.     The claims of the '036 and '107 patents are invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

## THIRD AFFIRMATIVE DEFENSE – INEQUITABLE CONDUCT

49.     The '036 and '107 patents are unenforceable under the doctrine of inequitable conduct because Hangzhou Chic's Chair and General Manager, Jiawei Ying, who is listed as the sole inventor of the '036 patent and co-inventor of the '107 patent, committed fraud before the United States Patent and Trademark Office ("USPTO") during the prosecution of the '036 and '107 patents to obtain patent issuance.

50.     During prosecution of the '036 and '107 patents, Mr. Ying, as a listed inventor and representative of the applicant Hangzhou Chic, had a duty of candor and was obligated to disclose material information to the Patent Examiner.  Mr. Ying was fully aware of this duty of candor.  In an interview published on March 18, 2016 on a Chinese website, available at http://www.aiweibang.com/yuedu/98972239.html, Mr. Ying acknowledged this duty:  "As required by U.S. law, if you want to apply for a patent in the U.S. Patent Office, you need to tell the U.S. Patent Office whether there were similar patented technologies in other countries prior to your invention.  A patent must have characteristics not present in similar patented technologies; or else the patent may be invalidated."

51.     Yet, Mr. Ying failed to disclose material information, as further elaborated below, to the USPTO with the intent to deceive.  But for Mr. Ying's nondisclosure of material information, the USPTO would not have issued the '036 and '107 patents.

## BACKGROUND

52.     The application that issued as the '036 patent was filed in the United States on December 9, 2016, as a continuation of PCT Application No. PCT/CN2014/092849 ("the '849 PCT application"), which was filed on December 2, 2014.  The application that issued as the '107 patent is a continuation of the application that issued as U.S. Patent No. 9,376,155 ("the '155 patent"), which was filed in the United States on December 2, 2014, as a national phase application of the '849 PCT application.   Therefore, the '036 and '107 patents include the same patent disclosure, and the '107 patent includes the prosecution history of the '155 patent.  Both the '036 patent and the '107 patent claim priority to Chinese patent application 201410262353 ("the CN '353 application") filed on June 13, 2014.  In other words, the CN '353 application describes the same alleged invention as the application that issued as the '036 patent and the application that issued as the '107 patent.

53.     During prosecution of the '036 and '107 patents, despite being fully aware of his duty of candor, Mr. Ying breached his duty of candor to the USPTO by misrepresenting the prior art and intentionally withholding material information with the intent to deceive the USPTO.  The Patent Examiner would not have allowed the '036 and '107 patents if he was not misled by Mr. Ying's material misrepresentations and was made aware of this material information.

54.     During prosecution of the '036 patent and the '155 patent (the parent of the '107 patent),  Mr. Ying failed to disclose to the USPTO, with the intent to deceive, that another individual, Shane Chen, is the inventor of the "Hovertrax" hoverboard, which was manufactured by his company Inventist, Inc. in the United States more than one year before the effective filing date of the '036 and '107 patents.  Mr. Chen was issued the hoverboard patent – U.S. Patent No. 8,738,278 ("the '278 patent") – based on a provisional application that he filed on February 12,

2012.  He displayed prototypes of his invention at a toy fair in New York in February 2012 and again in February 2013.  He disclosed information about his invention in a Kickstarter fundraising campaign beginning in April 2013.  Mr. Ying's priority CN '353 application was filed much later on June 13, 2014, and '155 and '036 applications even later on December 2, 2014 and December 9, 2016, respectively.  Mr. Ying knew about Mr. Chen's invention and failed to accurately and fully disclose what he knew to the USPTO to mislead the USPTO into issuing the '155 and '036 patents.

55.     Hangzhou Chic also asserted the '155 patent against Razor USA LLC in the Central District of California, Civil Action No. 2:16-cv-06359-RGK-AJW.  Razor asserted a similar affirmative defense and counterclaim of inequitable conduct in that case with respect to the '155 patent.  A copy of Razor's Amended Answer to First Amended Complaint and Counterclaims is attached as **Exhibit 2**.  In that case, Hangzhou Chic filed a Motion to Dismiss Razor's Inequitable Conduct Claim and Strike Razor's Inequitable Conduct Affirmative Defense and Razor filed an Opposition Memorandum.  The Honorable R. Gary Klausner, United States District Judge Central District of California, issued an Order denying Hangzhou Chic's motion to dismiss, finding that Razor's "pleading is sufficient to support an inference of intent to deceive, as well as knowledge and materiality of the omitted information.  The Answer's inequitable conduct claim is plausible." A copy of Judge Klausner's Order is attached as **Exhibit 3**.  On information and belief, the case ultimately was dismissed based on settlement by the parties.

56.     Hangzhou Chic also asserted the '155 against Swagway, LLC ("Swagway") in the Northern District of California, Civil Action No. 3:16-cv-04804-HSG (later transferred to the Northern District of Indiana, Civil Action No 3:16-cv-00567-PPS-MGG).  Swagway asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to

the '155 patent.   A copy of Swagway's Answer, Affirmative Defenses, and Counterclaims is attached as **Exhibit 4**.  In that case, Hangzhou Chic answered Swagway's counterclaims and did not move to dismiss or strike.  The case ultimately was dismissed based on settlement by the parties.

57.    Hangzhou Chic also asserted the '155 patent and U.S. Patent No. 9,452,802 ("the '802 patent"), another patent that issued from a continuation of the application that issued as the '155 patent, against Hillo America, Inc., currently pending in the Central District of California, Civil Action No. 2:19-cv-03028-JAK (AFMx).   On May 20, 2019, Hillo asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155 and '802 patents.  A copy of Defendant Hillo America, Inc.'s Answer is attached as **Exhibit 5**.

58.    Plaintiffs also asserted the '155 and '802 patents against Defendants and Counterclaimants in Civil Action No. 3:19-CV-0754-N, and Defendants and Counterclaimants asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155 and '802 patents.

## MR. YING'S MISREPRESENTATIONS REGARDING THE PRIOR ART

59.    The '278 patent, among other things, claims a two-wheel, self-balancing vehicle with two foot placement sections that are "rotatably coupled."   Although the '278 patent was disclosed as prior art during prosecution of the '036 and '107 patents, the Related Art Section of the '036 and '107 patent specification only mentions existing electric balancing vehicles operating via a manually controlled steering rod.  Even though the '278 patent claims and discloses "rotatably coupled" foot placement sections, Mr. Ying falsely stated in the '036 and '107 patent applications that the foot platforms of existing prior art balance vehicles "is always kept in a horizontal state during use and cannot rotate relatively" and "[t]herefore, the user cannot control the balance

vehicle merely through the feet." '036: Col. 1, lns. 30-38; '107 Col. 1, lns. 35-44.  However, Mr. Ying knew that statement was not true, since he knew about Mr. Chen's hoverboard which did exactly that - it allowed relative rotation of the foot platforms permitting user control of the balance vehicle "merely through the feet," consistent with the disclosure in the '278 patent.

60.     The '278 patent also discloses wheels located at the left and right edges of the vehicle body, each including a "motorized hub assembly 117, 132 (shown in FIG. 2)." '278: Col. 2, lns. 64-67.  Even though the '278 patent discloses wheels located at the left and right edges of the vehicle body, each including a hub motor,  Mr. Ying falsely stated in the '036 and '107 patent applications:  "According to the present invention, the wheels are located at the left and right edges of the vehicle body.  Thus, the wheels with larger sizes can be used.  Compared to the existing balance vehicle with wheels installed at the bottom of the bottom cover, the electric balance vehicle has considerable movement and speed advantages.  Further, the hub motors are adopted in the present invention, and the motors are directly installed in the wheels.  Accordingly, the structure of the electric balance vehicle is more compact.  Compared with the balance vehicle singly installed with a motor, more space is saved and the entire device is more compact." '036: Col. 3, lns. 26-37; '107: Col. 3, lns. 34-45.  However, Mr. Ying knew that statement was not true, since he knew about Mr. Chen's hoverboard which included wheels located at the left and right edges of the vehicle body, each including a hub motor, consistent with the disclosure in the '278 patent.

61.     Mr. Ying's misrepresentations were material because the Examiner focused on the issue of the two platforms being "rotatable relative to each other" and "two wheels rotatably fixed at two sides of the inner cover" during prosecution of the '155 parent patent and he would not have allowed the patent otherwise.  Specifically, Kevin Hurley, Primary Examiner, Art Unit 3611, of

the '155 patent application stated the following in the April 12, 2016 Examiner's Statement of

Reasons for Allowance of the claims of the '155 patent application (emphases added) (**Exhibit 1**):

> The reason for the allowance of claim 1 is that the prior art fails to disclose an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and ***rotatable relative to each other***; a rotating mechanism fixed between the first inner cover and the second inner cover; and ***two wheels rotatably fixed at two sides of the inner cover***, respectively.

But for Mr. Ying's misrepresentations, the '155 patent would not have issued, and for the same

reasons, the '036 and '107 patents would not have issued.

62.     In addition to misrepresenting the prior art, during prosecution of the '036 and '107

patent applications, Mr. Ying also breached his duty of candor to the USPTO by intentionally

withholding material information by at least (a) not disclosing the Hovertrax during prosecution

of the '036 patent, and (b) by not disclosing during prosecution of the '107 patent the existence of

*Unicorn Global, Inc. et al. v. Golabs, Inc. et al.*, Civil Action No. 3:20-CV-00754, and any of the

extensive briefing, contentions, and claim charts comparing the asserted claims to the Hovertrax

that were disclosed in that litigation.  The Patent Examiner would not have allowed the '036 and

the '107 applications if he were aware of any of this material information.

## MR. YING'S OMISSION OF THE HOVERTRAX

### The Hovertrax Was Material To The Patentability Of The '036 And '107 Patents

63.     As explained above, Mr. Ying knew the Chen invention claims "rotatably-coupled"

foot placement sections and wheels located at the left and right edges of the vehicle body, each

including a hub motor, but falsely represented otherwise.  Compounding these misrepresentations

was a failure to disclose any information regarding the Hovertrax during prosecution of the '036

patent and prosecution of the parent '155 patent of the '107 patent, including information about

the prototype Hovertrax hoverboards disclosed by Mr. Chen in 2012, 2013, and in connection with his Kickstarter campaign.

64.     Moreover, on information and belief, Mr. Ying and Hangzhou Chic studied the Hovertrax before the December 2, 2014 filing date of the parent PCT/CN2014/092849 application (and '155 patent application) of the asserted '036 and '107 patents (**Exhibits 7** (Tr.) at 45:1-5, 67:19-68:3, 68:23-69:2, 74:15-75:6, 77:6-8, 80:3-11, 81:13-17); **Exhibit 8** at 6; **Exhibit 9**), and had continued communications with Mr. Chen regarding the Hovertrax while the parent PCT/CN2014/092849 application (and '155 patent application) was being prosecuted before the USPTO (**Exhibit 7** (Tr.) at 84:9-15, 84:25-86:9, 87:25-88:8, 88:13-89:23, 90:11-24).

65.     Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair.  After receiving interest in the Hovertrax, Mr. Chen launched a Kickstarter campaign in April 2013 to raise funding to further develop and to commercialize the Hovertrax.

66.     This timeline is supported by a video posted on YouTube on February 10, 2013, regarding the 2013 Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, and the timeline on Mr. Chen's Kickstarter webpage, at:

https://www.kickstarter.com/projects/687658339/hovertrax/updates.     Mr. Chen's Kickstarter webpage shows the Hovertrax prototype as follows:



67.     Mr. Chen's Kickstarter page also contains a 2013 video of the Hovertrax prototype in use, at https://www.kickstarter.com/projects/687658339/hovertrax/description.

68.     On May 27, 2014, the USPTO issued the '278 patent to Mr. Chen.  The '278 patent, issued prior to the June 13, 2014 priority date for both the asserted '036 and '107 patents and the '155 patent, contains similar claims as the '036, '107 and '155 patents.  For example, claim 1 of the '278 patent recites "A two-wheel, self-balancing vehicle device, comprising: a first foot placement section and a second foot placement section that are coupled to one another and are independently movable with respect to one another."  Similarly, claim 1 of the '155 patent recites "An electric balance vehicle, comprising: . . . a first top cover and a second top cover disposed symmetrically and rotatable relative to one another."  Claim 1 of both patents also recites parallel wheels on each side of the platforms, motors fixed to each wheel, sensors under each foot platform, and a control system that communicates between the sensors, motors, and wheels to make the device drive.  Claim 2 of the '278 patent is a dependent claim from Claim 1 and recites "wherein the first foot placement section and the second foot placement section are rotatably coupled to one another."

69.     The Hovertrax prototype embodies all of the elements claimed in the '278 patent and virtually all of the elements claimed in the '155, '036 and '107 patents.  Like the claims of the '278, '155, '036 and '107 patents, the Hovertrax is comprised of two independently movable foot platforms rotatable relative to each other, a top cover comprising a first top cover and a second top cover disposed symmetrically and rotatable relative to each other, a bottom cover fixed to the top cover and comprising a first bottom cover and a second bottom cover disposed symmetrically and rotatable relative to each other, an internal frame comprising a first internal frame and a second internal frame disposed symmetrically and rotatable relative to each other, a rotating mechanism fixed between the first internal frame and the second internal frame, wheels located on the left and right edges of the vehicle body, including a hub motor in each wheel, a plurality of sensors, a power supply and a control system that controls the hub motors to drive the corresponding wheels to rotate according to sending signals transmitted by the sensors.

70.     The Hovertrax Kickstarter webpage has prominently displayed photos, video, schematics, and a narrative description of the Hovertrax prototype, as seen at https://www.kickstarter.com/projects/687658339/hovertrax/description.  This webpage originated in and is accessible in the United States.  Thus, these photographs, videos, and schematics constitute a public display of the prototype in the United States.  Attached as **Exhibit 6** is a screenshot of the Hovertrax Kickstarter webpage as it appeared on May 4, 2013.

71.     Mr. Chen's Kickstarter page shows a computer aided design of the Hovertrax while in development as follows:

16



72.    The webpage also displays a 3D rendering of the Hovertrax as follows:



73.    These images, which have been available on the webpage since 2013, show that the Hovertrax prototype contains an internal frame comprising a first internal frame and a second internal frame disposed symmetrically and rotatable relative to each other ; a rotating mechanism

fixed between the first internal frame and the second internal frame; and two wheels rotatably fixed at two sides of the internal frame, respectively.



74.    An analysis of the Hovertrax sold prior to the June 13, 2014 priority date of the '155, '036 and '107 patents establishes that it includes an internal framework, comprising a first internal frame and a second internal frame rotatable relative to each other having a combination of metallic parts and plastic parts molded to the top and bottom covers.  The Hovertrax satisfies virtually all of the limitations of the independent claims of the '155, '036 and '107 patents.  *See* **Exhibit 10**.  Plaintiffs' expert from the ongoing litigation between the parties, agrees that, applying his claim constructions, virtually all of the limitations of the independent claims of the '155 and '802 patents are met by the Hovertrax.  **Exhibit 11** (Tr.) at 117:18-24, 118:13-119:18, 120:13-123:4, 123:19-21, 124:24-125:21, 126:15-128:6, 128:20-23, 129:9-130:4, 131:7-132:5, 132:24-133:4.

75.    The Hovertrax is not cumulative to any reference, including the '278 patent, disclosed during prosecution of the '155 and '036 patents.  As discussed in more detail *infra*, the

Hovertrax Kickstarter Website Archive, Guide and Manual and YouTube video (Non-Patent Literature References 4, 5 and 12) were disclosed in an Information Disclosure Statement ("IDS") submitted by Applicants during later prosecution of the '107 continuation patent, buried among 151 references, many in the Chinese language, confirming this information should have been disclosed in the earlier prosecution of the '155 and '036 patents. Even with respect to the '107 patent, this disclosure did not satisfy the Applicants' duty of candor, because the Applicants did not disclose to the Examiner, pursuant to MPEP §2001.06(c), that the subject matter for which the '107 patent was being sought is the subject of litigation in *Unicorn et al. v. Golabs et al.*, Civil Action No. 3:19-CV-0754-N, and also did not disclose any of the extensive briefing, contentions, and claim charts comparing the asserted claims to the Hovertrax that were disclosed in that litigation.

76.     If disclosed during prosecution of the '155 and '036 patents, the Hovertrax would have been the only hoverboard product disclosed. Moreover, the Hovertrax includes two platforms that can rotate relative to each other and the user can control the balance of the Hovertrax merely through their feet. This is directly contrary to how Mr. Ying represented the existing balance vehicles were configured and functioned in the '155, '036 and '107 patents: "The foot platform of the existing balance vehicle is generally a flat plate, and the foot platform is always kept in a horizontal state during use and cannot rotate relatively. Therefore, the user cannot control the balance vehicle merely through the feet." '155: Col. 1, lns. 23-27; '036: Col. 1, lns. 34-38; '107: Col. 1, lns. 39-43. In addition, the Hovertrax has two wheels rotatably fixed at the left and right edges of the vehicle body, including a hub motor within each wheel. This directly contradicts Mr. Ying's representation in the specification of the '155, '036 and '107 patents that prior art

19

hoverboards lacked these features.  '155:  Col. 3, lns. 12-22; '036:  Col. 3, lns. 26-38; '107:  Col, 3, lns. 34-45.

77.     Furthermore, Hovertrax includes a first and second top cover, a first and second bottom cover and a first and second internal frame rotatable relative to each other.  **Exhibit 11** (Tr.) at 118:25-119:16, 122:10-14.  The internal frame of the Hovertrax also includes additional details, not disclosed in the '278 patent, showing how the electronic elements inside the vehicle body are protected by the internal framework and "a space for fixing the electronic elements is formed between" the internal framework and the top and bottom covers consistent with the benefits provided by the inner cover disclosed in the '155, '036 and '107 patents.  '155:  Col. 2, ln. 67 - Col. 3, ln. 4; '036:  Col. 3, lns. 13-21; '107:  Col. 3, lns. 19-27.

**Mr. Ying's Failure To Disclose The Hovertrax Was But-For Material To The Patentability Of The '036 And '107 Patents**

78.     These features of the Hovertrax are material because the very basis for Examiner Hurley's determination that the '155 application was patentable over the prior art was the incorrect belief that the prior art did not contain the "inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively."  Had Mr. Ying disclosed the Hovertrax, the Examiner would have seen that a product in public use and on sale before the priority date of the asserted patents included an internal frame comprising a first internal frame and a second internal frame rotatable relative to each other, a rotating mechanism fixed between the first internal frame and the second internal frame and two wheels rotatably fixed at two sides of the internal frame, respectively.  As a result, the Examiner would have denied the '155, '036 and '107 applications as at least obvious over the prior art.  But for Mr. Ying's failure to disclose the Hovertrax product, the Examiner would

not have issued the '155, '036 and '107 patents.  Judge Klausner's Order (**Exhibit 3**) (The Hovertrax "is but for material.")

79.    The Hovertrax prototype is not cumulative of the '278 patent because it provides additional detail.  Even though the prototype practices the '278 patent, it also contains the internal frame features described above which are not explicitly disclosed in the '278 patent.  This non-cumulative portion of the Hovertrax is therefore material.  Judge Klausner's Order (**Exhibit 3**) (The Hovertrax "is not cumulative.")

**Mr. Ying Knew Of The Material Omission Of The Hovertrax**

80.    Mr. Ying knew of the Hovertrax and the material information contained therein before the '155, '036 and '107 patents issued.  Judge Klausner Order (**Exhibit 3**) ("it is plausible that Ying knew about the Kickstarter information"; "Ying plausibly had knowledge of the Hovertrax by the time he filed the CN application").   Mr. Chen (along with his licensee Razor) filed a First Amended Complaint against Hangzhou Chic and other respondents with the United States International Trade Commission ("ITC") in Inv. No. 337-TA-1000, *Certain Motorized Self-Balancing Vehicles* ("ITC 1000"), on March 21, 2016.   Paragraph 56 of the First Amended Complaint states:

> Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair.  After receiving significant interest in the Hovertrax at the New York Toy Fair, Mr. Chen and Inventist launched a Kickstarter campaign in April 2013 to raise funding to support the further development and commercialization of the Hovertrax.

81.    Mr. Ying was aware of this allegation as demonstrated by the fact that he verified Hangzhou Chic's response to the ITC First Amended Complaint on June 15, 2016 before issuance of the '155, '036 and '107 patents while he still had a duty to disclose material information to the USPTO.

21

82.     Mr. Ying was aware of the Hovertrax Kickstarter page and the Hovertrax prototype. The Kickstarter page clearly shows that the Hovertrax prototype contains features similar to those accused of infringement in this case, including what Hangzhou Chic has characterized as an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover.

83.     Mr. Ying was also familiar with Mr. Chen's Hovertrax product independently of the ITC First Amended Complaint.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Chic's website at http://www.chic-robot.com/index.php/news/info/54, Mr. Ying stated that he believed Mr. Chen copied Chic's design in 2013 (which was before Mr. Ying filed his own application and after Mr. Chen filed his application).  Specifically, Mr. Ying claimed, based on a translation, that Mr. Chen's product "originated from us [Hangzhou Chic]." Thus, Mr. Ying was familiar with Mr. Chen's Hovertrax and recognized that it contained the same features as in the '155, '036 and '107 applications.

84.     On information and belief, Mr. Ying and Hangzhou Chic studied the Hovertrax before the December 2, 2014 filing date of the parent PCT/CN2014/092849 application (and '155 patent application) of the asserted '036 and '107 patents (**Exhibits 7** (Tr.) at 45:1-5, 67:19-68:3, 68:23-69:2, 74:15-75:6, 77:6-8, 80:3-11, 81:13-17; **Exhibit 8** at 6; **Exhibit 9**), and had continued communications with Mr. Chen regarding the Hovertrax while the parent PCT/CN2014/092849 application (and '155 patent application) was being prosecuted before the USPTO (**Exhibit 7** (Tr.) at 84:9-15, 84:25-86:9, 87:25-88:8, 88:13-89:23, 90:11-24).  Mr. Ying and Mr. Chen were not strangers; nor was the Hovertrax and its materiality unknown to Mr. Ying.

**Mr. Ying's Omission Of The Hovertrax During Prosecution Of The '115 and '036 Patents Was Made With The Intent To Deceive The USPTO**

85.     On information and belief, despite studying the Hovertrax before the December 2, 2014 filing date of the parent PCT/CN2014/092849 application (and '155 patent application), and being aware of the structure, function and operation of the Hovertrax, Mr. Ying did not disclose the Hovertrax to any of the attorneys involved in prosecution of the '155 and '802 patents, and the same omission occurred during prosecution of asserted '036 patent.  *See* **Exhibit 7** (Tr.) at 45:1-5, 67:19-68:3, 68:23-69:2, 74:15-75:6, 77:6-8, 80:3-11, 81:13-17, 84:9-15, 84:25-86:9, 87:25-88:8, 88:13-89:23, 90:11-24.

86.     Even though Mr. Ying was aware of Mr. Chen's Hovertrax and its public use and sale in the United States, he failed to disclose it to the USPTO during prosecution of the '155 and '036 patents.  Mr. Ying was aware, as of April 12, 2016, that the patentability of the '155 patent was reliant on the Examiner's conclusion that the prior art failed to disclose "the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively."

87.     Once Mr. Ying became aware of the Hovertrax, he would have easily been able to recognize that disclosing the Hovertrax would preclude Chic from securing the '155 and '036 patents.  As a result, Mr. Ying deliberately chose not to disclose the Hovertrax and allowed the Examiner to base his determination on incomplete information.   Mr. Ying's affirmative misrepresentation of the prior art further demonstrates Mr. Ying's intent to deceive the USPTO.

**Mr. Ying's Intent To Deceive The USPTO Continued During Prosecution Of The '107 Patent**

88.     As previously addressed, the Hovertrax Kickstarter Website Archive, Guide and Manual and you tube video (Non-Patent Literature References 4, 5 and 12) were disclosed in an IDS submitted by Applicants during the later prosecution of the '107 continuation patent buried among 151 references, many in the Chinese language, confirming this information should have been disclosed in the earlier prosecution of the '155 and '036 patents.  Even with respect to the '107 patent, this disclosure did not satisfy Applicants duty of candor, because Applicants did not disclose to the Examiner, pursuant to MPEP §2001.06(c), that the subject matter for which the '107 patent is being sought is the subject of litigation in *Unicorn et al. v. Golabs et al.*, Civil Action No. 3:19-CV-0754-N, and did not disclose any of the extensive briefing, contentions, and claim charts comparing the asserted claims to the Hovertrax that were disclosed in that litigation.  Had the foregoing information been disclosed to the Examiner regarding the materiality of the Hovertrax and Mr. Ying's knowledge regarding the material omission of the Hovertrax, the Examiner would not have allowed the claims in the '107 patent.

89.     In addition, the application that issued as the '107 patent is a continuation of the '155 patent application, names the same inventors Messrs. Ying and Cao as the '155 application, includes the same file history as the '155 application and claims the same priority to CN Application No. 2014/10262353.  Because the '107 application is a continuation of the '155 application, the '107 patent is unenforceable under the same grounds of inequitable conduct that apply to the parent '155 patent under the doctrine of infectious unenforceability.

## FOURTH AFFIRMATIVE DEFENSE – PATENT MISUSE

90.     Because the asserted '036 and '107 patents were obtained through knowing, willful

fraud on the USPTO, those patents are unenforceable.  Plaintiffs and Counterdefendants knew that

the '036 and '107 are unenforceable, and as such, the accused Hoverfly Eco, Hoverfly Ion, SRX,

SRX Pro, Hoverfly XL, 654-2, and Remix products could not infringe the claims of those patents.

Plaintiffs and Counterdefendants also knew that the asserted Claim 8 of each of the '036 and '107

patents is not infringed because the Accused Products do not include at least "an inner cover" that

is "a separate structural element that is not a part of the top cover or the bottom cover" as construed

by the Court in *Unicorn et al. v. Golabs et al.*, Civil Action No. 3:19-cv-0754-N, and "a shaft

sleeve installed in inner ends of the first inner cover and the second inner cover."  Plaintiffs and

Counterdefendants further knew that the asserted claims of the '036 and '107 patents are invalid

as at least obvious over Shane Chen's Hovertrax hoverboard with an internal frame comprising a

first internal frame and a second internal frame rotatable relative to each other, "a rotating

mechanism fixed between the first internal and the second internal frame and two wheels rotatably

fixed at two sides of the internal frame, respectively," which Mr. Ying failed to disclose to the

USPTO during prosecution of the '036 and '107 patents.

91.     Plaintiffs and Counterdefendants have been made aware that the asserted '036 and

'107 patents are invalid and unenforceable as a result of litigation that has involved related patents,

namely Hangzhou Chic's litigation against Swagway in the Northern District of Indiana, Civil

Action No. 3:16-cv-00567-PPS-MGG; Hangzhou Chic's litigation against Razor in the Central

District of California, Civil Action No. 2:16-cv-06359-RGK-AJW where Judge Klausner found

Razor's inequitable conduct allegations to be "plausible;"  Plaintiffs' and Counterdefendants'

litigation against  Hillo in the Central District of California, Civil Action No. 2:19-cv-03028-JAK

(AFMx); Plaintiffs' and Counterdefendants' litigation against E-Link Technology in the Northern District of Illinois, Civil Action No. 1:20-cv-4127;  Plaintiffs' and Counterdefendants' litigation against Golabs and Walmart in this Court, Civil Action No. 3:19-CV-754-N; and now in the instant litigation.

92.    Nonetheless, Plaintiffs and Counterdefendants filed this suit asserting infringement of the '036 and '107 patents with no reasonable basis for doing so, and with no purpose other than to impermissibly extend the scope of the '036 and '107 patents with intended anticompetitive effect.  As such, the claims of the '036 and '107 patents are unenforceable for patent misuse.

### FIFTH AFFIRMATIVE DEFENSE – LICENSE AND PATENT EXHAUSTION/FIRST SALE DOCTRINE

93.    Plaintiffs' and Counterdefendants' claims are barred, in whole or in part, pursuant to an express and/or implied license, and/or patent exhaustion.  Upon information and belief, and subject to further discovery, Plaintiffs' and Counterdefendants' claims are barred in whole or in part, because at least Golabs's Hoverfly ECO and Hoverfly XL products are the subject of an express license, sublicense, and/or implied license to the '036 and '107 patents, because those products were purchased from Zhejiang Taotao Vehicle Co. Ltd., a manufacturer that has held a patent license from Plaintiff Hangzhou Chic, and are subject to patent exhaustion.

### SIXTH AFFIRMATIVE DEFENSE – FULL COMPENSATION RULE AND PRIOR PAYMENT

94.    On information and belief and subject to further discovery, Plaintiffs' and Counterdefendants' claims are barred by prior payment and the full compensation rule.  Plaintiffs and Counterclaimants have been fully compensated by Zhejiang Taotao Vehicle Co. Ltd., a manufacturer that has held a patent license from Plaintiff Hangzhou Chic for the manufacture of at least Golabs's Hoverfly ECO and Hoverfly XL products, which were purchased by Golabs from

Zhejiang Taotao Vehicle Co. Ltd.  Plaintiffs and Counterclaimants are therefore precluded from claiming any damages for alleged infringement of the '036 and '107 patents by Golabs in connection with such products purchased by Golabs from Zhejiang Taotao Vehicle Co. Ltd.

## SEVENTH AFFIRMATIVE DEFENSE – EQUITABLE ESTOPPEL

95.     Plaintiffs' and Counterdefendants' claims are barred, in whole or in part, by the doctrine of equitable estoppel.

## EIGHTH AFFIRMATIVE DEFENSE – PROSECUTION LACHES

96.     Plaintiffs' and Counterdefendants' claims are barred, in whole or in part, by the doctrine of prosecution laches.

## NINTH AFFIRMATIVE DEFENSE – UNCLEAN HANDS

97.     Plaintiffs' and Counterdefendants' claims are barred, in whole or in part, by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE – FAILURE TO MARK

98.     Upon information and belief, Plaintiffs and Counterdefendants or their licensee(s), or both, failed to follow the marking requirements set forth in 35 U.S.C. §287.  Plaintiffs and Counterdefendants therefore cannot recover damages for any period prior to receiving notice of the asserted patents.

## ELEVENTH AFFIRMATIVE DEFENSE – NO INJUNCTIVE RELIEF

99.     Plaintiffs and Counterdefendants are not entitled to injunctive relief because any alleged injury to Plaintiffs and Counterdefendants is not immediate and/or irreparable, and Plaintiffs and Counterdefendants have an adequate remedy at law.

## TWELFTH AFFIRMATIVE DEFENSE – RESERVATION OF RIGHT TO ASSERT FUTURE AFFIRMATIVE DEFENSE

100.    Golabs and Walmart assert all other affirmative defenses that may become available as a result of information developed through discovery, trial, or otherwise, and reserve the right to seek leave to amend their Answer to plead additional defenses, or to supplement existing defenses, as such information becomes known throughout the course of discovery and this litigation.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, in view of the foregoing Answer, Golabs and Walmart pray for judgment against Plaintiffs and Counterdefendants as follows:

A.   That Plaintiffs and Counterdefendants take nothing by reason of this Original Complaint and that judgment be rendered in favor of Golabs and Walmart;

B.   That Plaintiffs and Counterdefendants be awarded costs of suit incurred in defense of this action; and

C.   For such other relief as the Court deems proper.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Golabs files these counterclaims against Plaintiffs and Counterdefendants and allege:

## PARTIES

1.     Golabs is a privately held Texas corporation with its principal place of business at 2201 Luna Road, Carrolton, TX 75006.

2.     Hangzhou Chic Intelligent Technology Co. Ltd. ("Hangzhou  Chic") alleges in its Complaint that it is a Chinese company organized and existing under the laws of the People's Republic of China with a principal place of business located at 2/F, No. 2 Building, Liangzhu University, Science and Technology Park, No. 1 Jingyi Road, Liangzhu, Hangzhou, 311112, People's Republic of China.

3.     Unicorn Global, Inc. ("Unicorn") alleges in its Complaint that it is a California corporation with its principal place of business located at 18333 Gale Ave., City of Industry, California 91748.

4.     Shenzhen Uni-Sun Electronic Co., Ltd. ("Uni-Sun") alleges in its Complaint that it is a company organized and existing under the laws of the People's Republic of China with a principal place of business located at No. 43 Lan Second Road, Longxin Area, Longgang District, Shenzhen Guangdong, 518000, People's Republic of China.

## JURISDICTION AND VENUE

5.     The First through Eleventh Counterclaims are actions arising under, and this Court has jurisdiction pursuant to, 28 U.S.C. §§1331, 1338(b) and 1367.

6.     The Sixth through Eleventh Counterclaims are actions for a declaration that each and every claim of U.S. Patent Nos. 10,167,036 ("the '036 patent") and 10,597,107 ("the '107 patent") (collectively "Patents-in-Suit" or "Asserted Patents") are invalid, unenforceable, and/or not

infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, et seq.  Accordingly, subject matter jurisdiction of this Court exists under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a).

7.    An actual, substantial, and continuing justiciable controversy exists between Golabs and Plaintiffs/Counterdefendants with respect to which Golabs requires a declaration of its rights by this Court.   Specifically, the controversy relates to the invalidity, unenforceability, and noninfringement of the Patents-in-Suit and to Plaintiffs' and Counterdefendants' right to threaten and/or maintain a suit for infringement of Patents-in-Suit.

8.    This Court has personal jurisdiction over Plaintiffs and Counterdefendants.  By filing their Complaint in this case, Plaintiffs and Counterdefendants have consented to personal jurisdiction in the Northern District of Texas.

9.    The claims for declaratory judgment of invalidity, unenforceability, and noninfringement are compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure.

10.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

## FACTUAL BACKGROUND

### Plaintiff And Counterdefendant Hangzhou Chic Is Among The Top Players And Manufacturers In The Expanding Hoverboard Market

11.    A hoverboard is a two-wheeled, battery operating self-balancing vehicle which is used for personal, business and recreational purposes.   The demand for hoverboards has increased considerably owing to the rising use of hoverboards for recreational activities as well as for personal mobility and is gaining popularity across the globe.  Moreover, increasing interest of consumers towards self-balancing and battery operated hoverboards along with the rising population of youngsters are some of the key factors for the expected boost in the demand for

hoverboards, thus driving the growth of the global hoverboard market.  "Hoverboard Market (By Product – 6.5 inch, 8 inch, 10 inch; By Application – Recreational activities, Business Purposes, Personal Mobility, Others) – Global Industry, Size, Share, Trends and Forecasts, 2018 – 2026", Acumen Research and Consulting (hereinafter "ARC article").

12.    The U.S. is the largest consumer market for hoverboards and the worldwide market for hoverboards is expected to grow roughly 12.3% over the next five years to reach $1.2 billion in 2024 from $600 million in 2019.  "Hoverboard Scooter Market 2019 By Key Players, Product and Production from Information Analysis And Forecast To 2024 With Geographic Segmentation, Statistical Forecast, and Competitive Landscape", World Market Reports (March 22, 2019) (hereinafter "WMR article").  According to the TechSci Research report, "Global Hoverboard Market By Type, By Application, By Region, Competitor Forecast and Opportunities, 2015-2021," the growth in the global hoverboard market is projected to be even higher, surpassing $1.8 billion by 2021 "on account of rising demand for hoverboards from several countries in European, Asia-Pacific and Americas.  Moreover, about 30% of Chinese population, 31% of the United States, 22% of German population, 30% of French population, and 38% of Brazilian population fall in the age group of 0-25 years, thus expanding youth population across the globe is further anticipated to fuel demand for hoverboards during this forecast period."

13.    Hangzhou Chic is in every reported list of the top players and manufacturers in the industry. *See, e.g.*, ARC article; WMR article.

14.    On information and belief, Hangzhou Chic controls a substantial amount of products in the 6.5-inch hoverboard category on Amazon.com, and is attempting to monopolize at least that category.

**Plaintiffs And Counterdefendants Are Asserting Their Patents Against Hoverboard Competitors Without Regard To Patent Validity, Enforceability And Infringement In An Anticompetitive Attempt To Expand Their Market Position**

15.   In order to capitalize on this growing hoverboard market, and improperly attempt to monopolize and control the pricing in this market, Plaintiffs and Counterdefendants have embarked on an anticompetitive scheme to interfere with their competitors' business relations with customers and prospective customers.  Hangzhou Chic, using Shenzhen Uni-Sun as the "exclusive licensee" and directly or indirectly through Unicorn as its self-identified "enforcement" agent, has asserted its patents without regard to their validity, enforceability and infringement, pressing and causing Amazon.com to terminate its competitors' listings.

**Plaintiffs And Counterdefendants First Asserted Their Frivolous Patents In Litigation With Their Major Competitors Razor And Swagway Resulting In Settlements**

16.   Golabs repeats and realleges, as if fully set forth herein, the averments contained in paragraphs 49 - 89 of its Third Affirmative Defense (unenforceability of the Asserted Patents due to inequitable conduct and includes averments that the asserted claims of the '036 and '107 patents are invalid as at least obvious over Shane Chen's Hovertrax hoverboard with an internal frame comprising a first internal frame and a second internal frame rotatable relative to each other, "a rotating mechanism fixed between the first internal frame and the second internal frame and two wheels rotatably fixed at two sides of the internal frame, respectively," in support of these Counterclaims).

17.   Hangzhou Chic first asserted various other patents – 9,376,155 ("the '155 patent"), 9,452,802 ("the '802 patent"), and D737,723 ("the D'723 patent") – in litigation against its major competitors Razor and Swagway, also listed among the top players and manufacturers in the hoverboard market.

18.   Hangzhou Chic asserted the '155 patent against Razor in the Central District of California, Civil Action No. C.D. California, Civil Action No. 2:16-cv-06359-RGK-AJW.  Razor asserted a similar affirmative defense and counterclaim of inequitable conduct in that case with respect to the '155 patent.  The Honorable R. Gary Klausner presiding in that case issued an opinion finding that Razor's "pleading is sufficient to support an inference of intent to deceive, as well as knowledge and materiality of the omitted information.  The Answer's inequitable conduct claim is plausible."

19.   Hangzhou Chic asserted the '155 and D'723 patents against Swagway in the Northern District of California, Civil Action No. 3:16-cv-04804-HSG, transferred to the Northern District of Indiana, Civil Action No 3:16-cv-00567-PPS-MGG.  Swagway asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155 and D'723 patents.

20.   Plaintiffs and Counterdefendants next asserted the '155, '802, and D'723 patents against Golabs and Walmart, and that case is pending before this Court, Civil Action No. 3:19-cv-754-N (N.D. Tex.). The asserted patents in this case, the '036 and '107 patents, are related to the '155 and '802 patents, as all those patents claim priority to the same CN Application No. 2014/10262353, and the '107 patent issued from a continuation application of the application that issued as the '155 patent.  Before asserting the '155 and '802 patents in prior litigation against Golabs and Walmart, Plaintiffs and Counterdefendants knew that the '155 and '802 patents are unenforceable, and for the same reasons, the '036 and '107 are likewise unenforceable, including that the application that issued as the '107 patent is a continuation of the '155 patent application, and therefore, is unenforceable under the same grounds of inequitable conduct that apply to the parent '155 patent.  As such, Plaintiffs and Counterdefendants knew that the products accused in this litigation – the Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, Hoverfly XL, 654-2, and Remix

products – could not infringe the claims of the '036 and '107 patents, as those patents are unenforceable. Plaintiffs and Counterdefendants also knew that the asserted claims of the '036 and '107 patents are invalid as obvious over Shane Chen's Hovertrax hoverboard with an internal frame comprising a first internal frame and a second internal frame rotatable relative to each other, "a rotating mechanism fixed between the first internal frame and the second internal frame and two wheels rotatably fixed at two sides of the internal frame, respectively," which Mr. Ying failed to disclose to the USPTO during prosecution of the '036 patent and then later failed to disclose to the Examiner during prosecution of the '107 patent, pursuant to MPEP §2001.06(c), that the subject matter for which the '107 patent is being sought is the subject of litigation in Civil Action No. 3:19-CV-0754-N, and also failed to disclose any of the extensive briefing, contentions, and claim charts comparing the asserted claims to the Hovertrax that were disclosed in that litigation.

21.   In Hangzhou Chic's litigation with Razor, Razor also asserted that Hangzhou Chic has embarked on a plan to disrupt the market for Razor's hoverboard product by making statements about Razor's product and Hangzhou Chic's product to customers and prospective customers. Razor asserted that the false statements included: representing that the Razor product is no longer available when it is; representing that the U.S. patent licensed by Razor had been invalidated when it had not; representing that only Hangzhou Chic is selling patented and safety-certified hoverboards when Razor is selling patented and safety-certified hoverboards; representing that Hangzhou Chic has a judgment that has been served on Razor when that is not true; representing that only Hangzhou Chic can deliver product and other companies (such as Razor) cannot deliver product; representing that Hangzhou Chic holds the only hoverboard patent when Shane Chen holds a U.S. hoverboard patent that predates Hangzhou Chic's patent; and representing that the legal departments of retailers agree with Hangzhou Chic, which, on information and belief, is not

true.  Upon information and belief, and subject to further discovery, such allegations will be proven.

22.   Hangzhou Chic settled its litigation with Swagway, and, on information and belief, also settled its litigation with Razor.  Upon information and belief, and subject to further discovery, the settlement agreements will support Plaintiffs' and Counterdefendants' scheme to settle with their major competitors and then eliminate smaller competitors from the hoverboard market.

**Plaintiffs And Counterdefendants Continue To Assert Frivolous Patents To Eliminate Smaller Competitors From The Hoverboard Market**

23.   Plaintiffs and Counterdefendants have focused their plan on sweeping the smaller players off the field with their present actions against Golabs and Walmart in the instant case and the ongoing matter in this Court (Civil Action No. 3:19-cv-754-N), as well as against (1) Hillo America, Inc. in *Unicorn Global, Inc. v. Hillo America, Inc.*, Civil Action No. 2:19-cv-03028-JAK (AFMx) (C.D. Cal.); and (2) E-Link Technology Co. Ltd. in *Unicorn Global, Inc. v. E-Link Tech. Co. Ltd.*, Civil Action No. 1:20-cv-4127 (N.D. Ill.).

24.   On information and belief, Hillo is a small distributor of hoverboards as well as other retail products with 28 employees, and is located in Temple City, California.

25.   Plaintiffs and Counterdefendants asserted the '155, '802, and D'723 patents against Hillo America, Inc. in the Central District of California, Civil Action No. 2:19cv-03028-JAK (AFMx). On May 20, 2019, Hillo asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155, '802, and D'723 patents.

26.   In the Central District of California case, Hillo asserts that Hangzhou Chic has controlling monopoly power, that Hangzhou Chic control substantial amount of products in the 6.5-inch hoverboard category on amazon.com ("Relevant Market"), and that it is attempting to monopolize at least that category.  In order to illegally control the monopoly power and further manipulate the

predatory pricing scheme in the Relevant Market, Plaintiffs and Counterdefendants started by demanding that Hillo grant Plaintiffs and Counterclaim defendants immediate and continuous access to Hillo's computer systems and Hillo's 6.5 [inch] Hoverboard Electric Self-balancing Scooter sales data and pricing information at any given time, and then using the access to collect sales data and manipulate the pricing system in the Relevant Market.  Upon Hillo's rejection and refusal to collaborate, Plaintiffs and Counterdefendants intentionally, maliciously, and oppressively launched their illegal ***anticompetitive*** scheme to ***foreclose competition*** in the Relevant Market, used Shenzhen Uni-Sun as the ***exclusive*** licensee and Unicorn as "enforcement agent" in the U.S., pressed Amazon.com to ***terminate defendant's listings*** on Hoverboard products … and filed this retaliatory lawsuit on April 23, 2019 …."  *See* Defendant Hillo America, Inc.'s Answer (**Exhibit 5**).  Upon information and belief, and subject to further discovery, such allegations will be proven.

27.    On information and belief, E-Link is a company organized and existing under the laws of China, with its principle place of business at Al Block, Shi'ao 2nd Industrial Park, Langjing Road, Dalang, Longhua, Shenzhen, China 518109.

28.    On July 14, 2020, Plaintiffs Unicorn and Chic filed a Complaint in the District Court for the Northern District of Illinois against E-Link Technology Co. Ltd. asserting five patents, including the '155 and '802 patents, as well as U.S. Patents Nos. 10,696,378 ("the '378 patent") , 10,696,347 ("the '347 patent"), 10,486,767 ("the '767 patent") and 10,597,107 ("the '107 patent"), each of which is a continuation of the '155 patent.  Notably, all of the claims of the asserted '347 patent require "a limiting shaft," known by Plaintiffs to be an indefinite term rendering all claims of the '347 patent invalid under 35 U.S.C. §112(b).  *See* Civil Action No. 3:19-CV-0754-N,

Memorandum Opinion and Order (D.I. 134) at 10.  All of the claims of the '348 and '764 patents require a similar indefinite term "limiting mechanism."

### Plaintiffs and Counterdefendants Have Engaged In Anticompetitive Cyber Warfare Asserting Their Frivolous Patents Against Smaller Hoverboard Competitor Golabs And Their Customers And Prospective Customers

29.   GoLabs, Inc. d/b/a Gotrax was formed in or about May 2017.

30.   Golabs occupies a Wearhouse in Carrollton, Texas. Of the 25 employees that GoLabs employs, 19 employees work out of the Carrollton facility.

31.   GoLabs, Inc. sells hoverboards, as well as other mechanical devices, through online retailers like Walmart and Amazon as well as through its own website.

32.   In 2018, 48% of GoLabs's gross sales were hoverboards sold through Amazon.com. Having the source of 48% of sales cut off would be devastating for GoLabs.

33.   The 2019 sales of hoverboards through Amazon.com were expected to substantially increase.

34.   On October 28, 2018, both Hangzhou Chic and its enforcer Unicorn began improper, systematic complaints by email to Amazon.com regarding Defendant GoLabs's hoverboards and other products, alleging patent infringement.

35.   Upon information and belief, the following Table breaks down some of the numerous cyber complaints lodged by Hangzhou Chic, its enforcer Unicorn, and/or its counsel, identifying the date of communication with Amazon, the Complaint ID generated by Amazon, the patent asserted by Chic or Unicorn, the accused product(s), and the date when GoLabs received confirmation from Amazon that it cleared the complaint:

| Date | Complaint ID | Patent | Accused Product(s) | Clearance Date |
|------|--------------|--------|--------------------|----------------|
| 10/22/2018 | 5457069551 | 9,376,155 | 1. Hoverfly Eco | 11/27/2018 |
| 1/3/2019 | 5671275681 | D737,723S | 1. Hoverfly Eco | None |
| 1/3/2019 | 5670542371 | D738,256 | 1. ION | 1/8/2019 |
| 1/22/2019 | 5719652231 | D785,112S | 1. ION | 2/21/2019 |
| 2/22/2019 | 5821326431 | D738,256 (2)[2] | 1. SRX | 3/1/2019 |
| 4/19/2019 | 6000563831 | D785,112S (2) | 1. ION | 4/30/2019 |
| 4/23/2019[3] | 5999185211 | 9,376,155 (2)<br>9,452,802<br>D737,723 (2) | 1. ION<br>2. SRX<br>3. Hoverfly XL (no longer sold) | 4/30/2019 for ION only |
| 6/2/2019 | 6125244711 | 9,376,155 (3)<br>9,452,802 (2)<br>D737,723 (3) | 1. ION<br>2. SRX PRO<br>3. SRX<br>4. Fluxx3, Fluxx Watt, and Fluxx Watt + (all Fluxx hoverboards are not accused in the litigation) | None |

36.    As shown above, Plaintiffs' and Counterdefendants' bad faith conduct is revealed by their (1) continued assertion of patents that have already been cleared by Amazon, and (2) repeated attack on GoLabs with an improper and unjustified trial and error approach of patent assertion until the desired outcome of a delisting is achieved.  Plaintiffs' and Counterdefendants' activity with regard to the ION hoverboards illustrates these two points.  The ION product line was delisted on January 3, 2019, but GoLabs persuaded Amazon to relist the products on January 8, 2019 after providing information to Amazon to demonstrate that Plaintiffs' and Counterdefendants' infringement assertion was baseless.  Undeterred, Plaintiffs and Counterdefendants came back on January 22, 2019, accusing the ION products again of patent infringement.  This time, however, Plaintiffs and Counterdefendants asserted a new patent, the D'112S patent.  After receiving this

---

[2] The number in the parentheses indicates the number of times a patent has been asserted.  For example, "D738,256 (2)" is the second time the D'256 patent was asserted by Plaintiffs.
[3] This complaint appears to have been made by Plaintiffs and Counterdefendants' counsel in this litigation.  The email associated with this notice is wdunwoody@munckwilson.com.

notice, GoLabs cleared the complaint with Amazon, and got the ION products relisted on amazon.com on February 21, 2019.  Having failed in its two attempts of permanently delisting the ION hoverboards, Plaintiffs and Counterdefendants sent a third complaint regarding the ION products on April 19, 2019, accusing the ION products of infringing the same D'112S patent that had already been cleared.  A fourth Amazon complaint followed on April 23, 2019 regarding the ION, and Plaintiffs and Counterdefendants accused the ION of infringing the patents-in-suit.  The ION was relisted on April 30, 2019 based on non-infringement evidence submitted by GoLabs in response to the April 19 complaint.

37.    Furthermore, Plaintiffs' and Counterdefendants' bad faith conduct is also demonstrated by the fact that although they have filed complaints with Amazon with respect to other GoLabs' products, such as the Fluxx line of products, they choose to ignore those products for the purpose of litigation.  Instead, they rely on Amazon again to delist GoLabs' products, shielding the assertion of those products from potential adjudication.

38.    And finally, as a demonstrated above (Third Aff. Def. ¶¶ 49-89) and further below (Sixth through Eleventh Counterclaims), Plaintiffs and Counterdefendants continue to assert the '036 and '107 patents, even though they know the patents are not infringed, invalid, and/or unenforceable.

39.    The improper, systematic, cyber complaints caused significant harm to Golabs as they caused intermittent delistings of Golabs's hoverboards from Amazon's website until the complaints were cleared and damaged Golabs's reputation with Amazon.

40.    Ultimately, Amazon was dismissed from the prior lawsuit against Golabs (Civil Action No. 3:19-cv-754-N) in June 2019, and at or around that time, Amazon permanently delisted Golabs hoverboard products.  On information and belief, and as further discovery will show, this delisting

was an anti-competitive *quid pro quo* designed to eliminate Golabs as a competitor from the market.

41.    The permanent delisting of Golabs's hoverboard products from Amazon caused substantial losses to Golabs.  Without sales through Amazon, Golabs had to cut operating costs and laid off at least three employees.   Should Plaintiffs and Counterdefendants continue their frivolous litigations against Golabs, they will devastate GoLabs's business in the hoverboard market.

42.    Hangzhou Chic also in bad faith contacted Golabs's customer Walmart on April 9, 2019, asserting that Golabs's Hoverfly Eco and Hoverfly ION products infringe Hangzhou Chic's '155 and '802 patents, known by Hangzhou Chic to be invalid and unenforceable, and requested Walmart to stop selling these products.  Walmart investigated this claim and directed the third-party seller on Walmart Marketplace to resolve the claim with Plaintiff.

43.    There is a pending Civil RICO, Tortious Interference (bad faith), and declaratory judgment action against some of the Plaintiffs and Counterdefendants pending in the Northern District of Texas under Civil Cause No. 3:19-CV-1019.

## FIRST COUNTERCLAIM: LANHAM ACT § 43(a)

44.    Golabs incorporates paragraphs 1 through 434 as though set forth here in full.

45.    Plaintiffs and Counterdefendants or their agents are making false and misleading statements in communications with at least Amazon and Walmart about Golabs's products that are in commerce in the United States.

46.    The false and misleading statements have harmed or are likely to cause significant economic harm to Golabs and damage to its reputation.

47.    Golabs is entitled to damages and injunctive relief as provided for by law, including treble damages.

## SECOND COUNTERCLAIM: COMMON LAW UNFAIR COMPETITION

48.   Golabs incorporates paragraphs 1 through 47as though set forth here in full.

49.   Plaintiffs' and Counterdefendants' misconduct as alleged herein constitutes unfair and unlawful competition and/or unfair business practices in violation of the common law of the State of Texas because Plaintiffs and Counterdefendants or their agents have made false and misleading statements about Golabs's products in communications with at least Amazon and Walmart that have deceived Amazon and Walmart.

50.   Golabs is informed and believes, and therefore alleges, that Plaintiffs and Counterdefendants or their agents continue these unfair practices to this day.

51.   As a direct, proximate, and foreseeable result of Plaintiffs' and Counterclaim Defendants' unfair business practices, Golabs has suffered or is likely to suffer significant economic damages and damage to its reputation.

52.   Golabs is informed and believes, and therefore alleges, that Plaintiffs and Counterdefendants or their agents will continue to harm Golabs by making false representations about Golabs' products unless and until the Court orders Plaintiffs and Counterdefendants to cease and desist.

53.   Golabs is entitled to all remedies available under law.

## THIRD COUNTERCLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

54.   Golabs incorporates paragraphs 1 through 53 as though set forth here in full.

55.   Plaintiffs' and Counterdefendants' cyber complaints to Amazon, made with the knowledge that the Asserted Patents are invalid, unenforceable and/or not infringed, are bad faith representations vitiating the patent law preemption that would bar liability under state unfair competition and related tort claims.

56.   At the time Plaintiffs and Counterdefendants made these systematic misrepresentations, they were aware Golabs had an ongoing business relationship and there was a reasonable probability Golabs would have continued business relations with Amazon.

57.   Plaintiffs' and Counterdefendants' systematic misrepresentations and anticompetitive *quid pro quo* with Amazon were an intentional and unjustifiable attempt to induce Amazon to disrupt this business relationship and knew the misrepresentations and anticompetitive *quid pro quo* with Amazon was certain or substantially certain to disrupt Golabs's business relations with Amazon and cause Amazon to delist Golabs's products.

58.   Golabs has incurred and will incur significant economic costs and damage to its reputation as a result of Plaintiffs' and Counterdefendants' systematic misrepresentations and anticompetitive *quid pro quo* with Amazon causing Amazon to delist Golabs's products.

59.   Golabs is entitled to recover compensatory and punitive damages.

### FOURTH COUNTERCLAIM: WALKER PROCESS FRAUD, ATTEMPTED MONOPOLIZATION UNDER 15 U.S.C. § 2

60.   Golabs repeats and incorporates by reference paragraphs 1 through 59, the allegations in their Inequitable Conduct and Patent Misuse Affirmative Defenses (e.g., Aff. Def. ¶¶ 49-89), as well as the Sixth through Eleventh Counterclaims as if fully set forth herein.

61.   During prosecution of the '036 and '107 patents, Mr. Ying knowingly breached his duty of candor to the USPTO by misrepresenting the prior art and intentionally withholding material information with the intent to deceive the USPTO.  The Patent Examiner would not have allowed the '036 and '107 patents if he was not misled by Mr. Ying's material misrepresentations and was made aware of this material information.

62.   During prosecution of the '036 patent and the '155 patent (the parent of the '107 patent), Mr. Ying failed to disclose to the USPTO, with the intent to deceive, that another individual, Shane

Chen is the inventor of the "Hovertrax", which was manufactured by his company Inventist, Inc. in the United States more than one year before the effective filing date of the '036 and '107 patents. Mr. Chen was issued the hoverboard patent – U.S. Patent No. 8,738,278 (the "'278 patent") – based on a provisional application that he filed on February 12, 2012.  He displayed prototypes of his invention at a toy fair in New York in February 2012 and again in February 2013.  He disclosed information about his invention in a Kickstarter fundraising campaign beginning in April 2013. Mr. Ying's '155 patent application was filed much later on June 13, 2014 and Mr. Ying's '036 patent application even later on December 9, 2016.  Mr. Ying knew about Mr. Chen's invention and failed to accurately and fully disclose what he knew to the USPTO to mislead the USPTO into issuing the '155 and '036 patents.

63.    The '278 patent, among other things, claims a two-wheel, self-balancing vehicle with two foot placement sections that are "rotatably coupled."  Although the '278 patent was disclosed as prior art during prosecution of the '036 and '107 patents, the Related Art Section of the '036 and '107 patent specification only mentions existing electric balancing vehicles operating via a manually controlled steering rod.  Even though the '278 patent claims and discloses "rotatably coupled" foot placement sections, Mr. Ying falsely stated in the '036 and '107 patent applications that the foot platforms of existing prior art balance vehicles "is always kept in a horizontal state during use and cannot rotate relatively" and "[t]herefore, the user cannot control the balance vehicle merely through the feet."  '036: Col. 1. lns. 30-38; '107 Col. 1, lns. 35-44.  However, Mr. Ying knew that statement was not true, since he knew about Mr. Chen's hoverboard which did exactly that - it allowed relative rotation of the foot platforms permitting user control of the balance vehicle "merely through the feet," consistent with the disclosure in the '278 patent.

64.     The '278 patent also discloses wheels located at the left and right edges of the vehicle body, each including a "motorized hub assembly 117, 132 (shown in FIG. 2)." '278:  Col. 2, lns. 64-67. Even though the '278 patent discloses wheels located at the left and right edges of the vehicle body, each including a hub motor,  Mr. Ying falsely stated in the '036 and '107 patent applications: "According to the present invention, the wheels are located at the left and right edges of the vehicle body.  Thus, the wheels with larger sizes can be used.  Compared to the existing balance vehicle with wheels installed at the bottom of the bottom cover, the electric balance vehicle has considerable movement and speed advantages.  Further, the hub motors are adopted in the present invention, and the motors are directly installed in the wheels.  Accordingly, the structure of the electric balance vehicle is more compact.  Compared with the balance vehicle singly installed with a motor, more space is saved and the entire device is more compact." '036: Col. 3, lns. 26-37; '107:  Col. 3, lns. 34-45.   However, Mr. Ying knew that statement was not true, since he knew about Mr. Chen's hoverboard which included wheels located at the left and right edges of the vehicle body, each including a hub motor, consistent with the disclosure in the '278 patent.

65.     Mr. Ying's misrepresentations were material because the Examiner focused on the issue of the two platforms being "rotatable relative to each other" and "two wheels rotatably fixed at two sides of the inner cover" during prosecution of the '155 parent patent and he would not have allowed the patent otherwise.  Specifically, Kevin Hurley, Primary Examiner, Art Unit 3611, of the '155 patent application stated the following in the April 12, 2016 Examiner's Statement of Reasons for Allowance of the claims of the '155 patent application (emphasis added) (**Exhibit 1**):

> The reason for the allowance of claim 1 is that the prior art fails to disclose an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and ***rotatable relative to each other***; a rotating mechanism fixed between the first inner cover and

> the second inner cover; and *two wheels rotatably fixed at two sides of the inner cover*, respectively.

But for Mr. Ying's misrepresentations, the '155 patent would not have issued, and for the same reasons, the '036 and '107 patents would not have issued.

66.    In addition to misrepresenting the prior art, during prosecution of the '036 and '107 patent applications, Mr. Ying also breached his duty of candor to the USPTO by intentionally withholding material information by at least (a) not disclosing the "Hovertrax" prototype during prosecution of the '036 patent, and (b) by not disclosing during prosecution of the '107 patent the existence of *Unicorn Global, Inc. et al. v. Golabs, Inc. et al.*, Civil Action No. 3:20-CV-00754, and any of the extensive briefing, contentions, and claim charts comparing the asserted claims to the Hovertrax that were disclosed in that litigation.  The Patent Examiner would not have allowed the '036 and the '107 applications if he were aware of any of this material information.

67.    Plaintiffs and Counterdefendants knew that the '036 and '`107 patents are unenforceable, and that, as such, Golabs's Hoverfly XL, Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, 654-2 and Remix products could not infringe the claims of those patents.  Plaintiffs and Counterdefendants also knew that asserted Claim 8 of each of the '036 and '107 patents is not infringed because the Accused Products do not include at least "an inner cover" that is "a separate structural element that is not a part of the top cover or the bottom cover," as construed by the Court in *Unicorn et al. v. Golabs et al.*, Civil Action No. 3:19-cv-0754-N, and "a shaft sleeve in inner ends of the first inner cover and the second inner cover."  Plaintiffs and Counterdefendants further knew that the asserted claims of the '036 and '107 patents are invalid as at lease obvious over Shane Chen's Hovertrax hoverboard with an internal frame comprising a first internal frame and a second internal frame rotatable relative to each other, "a rotating mechanism fixed between the first internal frame and the second internal frame and two wheels rotatably fixed at two sides of the internal frame,

respectively," which Mr. Ying failed to disclose to the USPTO during prosecution of the '036 and '107 patents.

68.    Plaintiffs and Counterdefendants have been made aware that the Asserted Patents are invalid and unenforceable in every litigation in which they have been asserted, namely Hangzhou Chic's litigation against Swagway in the Northern District of Indiana, Civil Action No. 3:16-cv-00567-PPS-MGG; Hangzhou Chic's litigation against Razor in the Central District of California, Civil Action No. 2:16-cv-06359-RGK-AJW where Judge Klausner found Razor's inequitable conduct allegations to be "plausible";  Plaintiffs' and Counterdefendants' litigation against  Hillo in Central District of California, Civil Action No. 2:19-cv-03028-JAK (AFMx); Plaintiffs' and Counterdefendants' litigation against Golabs and Walmart in Civil Action No. 3:19-CV-0754-N; and now in the instant litigation.

69.    Nonetheless, Plaintiffs and Counterdefendants filed this suit asserting infringement of the '036 and '107 patents with no reasonable basis for doing so and with no purpose other than to impermissibly extend the scope of the '036 and '107 patents with intended anticompetitive effect.

70.    Through this fraud and the filing of this lawsuit based upon fraudulently obtained patents, Plaintiffs and Counterdefendants engaged in anticompetitive or predatory conduct and filed this and other lawsuits with the specific intent to monopolize in violation of 15 U.S.C. § 2.  As to the allegations contained in these Counterclaims, the relevant geographic market is the United States.

71.    There is a dangerous probability that Plaintiffs and Counterdefendants will achieve monopoly power in the personal transporter market.  Eliminating Golabs from the hoverboard market would remove one of the few remaining competitors in this market and assist Plaintiffs and Counterdefendants in achieving monopolistic power over the market.  This is especially true in light of Plaintiffs and Counterdefendants' current market position, prior settlement of litigations

against major players Razor and Swagway and their pending lawsuits in this District, in the Central District of California and in the Northern District of Illinois to eliminate small players Golabs, Hillo and E-Link from the hoverboard market.

72.    As a result of Plaintiffs and Counterdefendants' unlawful, anticompetitive acts, Golabs and Walmart have suffered and will continue to suffer antitrust injury in an amount to be determined at trial.   Golabs and Walmart have already had to expend a substantial amount of resources defending Civil Action No. 3:19-CV-0754-N and now this action, and will continue to do so if Plaintiffs and Counterdefendants continue to assert the fraudulently obtained '036 and '107 patents.

73.    As such, Golabs has suffered injury of the type forbidden under the antitrust laws of the United States.   Thus, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Golabs may assert a private right of action for actual and treble damages as well as reasonable attorneys' fees.

## FIFTH COUNTERCLAIM: SHAM LITIGATION, ATTEMPTED MONOPOLIZATION UNDER 15 U.S.C. § 2

74.    Golabs repeats and incorporates by reference paragraphs 1 through 73, the allegations in their Affirmative Defenses Paragraphs 49-89, as well as their Sixth through Eleventh Counterclaims as if fully set forth herein.

75.    Upon information and belief, Plaintiffs and Counterdefendants knew that the '036 and '107 patents were not infringed, invalid and unenforceable when they filed this lawsuit.

76.    Plaintiffs and Counterdefendants knew that the '036 and '107 patents are unenforceable, and that, as such, Golabs's Hoverfly XL, Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, 654-2 and Remix products could not infringe the claims of those patents.   Plaintiffs and Counterdefendants also knew that asserted Claim 8 of the '036 and '107 patents are not infringed because the Accused Products do not include at least "an inner cover" that is "a separate structural element that is not a

47

part of the top cover or the bottom cover" as construed by the Court in *Unicorn et al. v. Golabs et al.*, Civil Action No. 3:19-cv-0754-N and "a shaft sleeve in inner ends of the first inner cover and the second inner cover."  Plaintiffs and Counterdefendants further knew that the asserted claims of the '036 and '107 patents are invalid as at lease obvious over Shane Chen's Hovertrax hoverboard with an internal frame comprising a first internal frame and a second internal frame rotatable relative to each other, "a rotating mechanism fixed between the first internal frame and the second internal frame and two wheels rotatably fixed at two sides of the internal frame, respectively," which Mr. Ying failed to disclose to the USPTO during prosecution of the '036 and '107 patents.

77.    Plaintiffs and Counterdefendants have been made aware that the Asserted Patents are invalid and unenforceable in every litigation in which they have been asserted, namely Hangzhou Chic's litigation against Swagway in the Northern District of Indiana, Civil Action No. 3:16-cv-00567-PPS-MGG; Hangzhou Chic's litigation against Razor in the Central District of California, Civil Action No. 2:16-cv-06359-RGK-AJW, where Judge Klausner found Razor's inequitable conduct allegations to be "plausible";  Plaintiffs' and Counterdefendants' litigation against  Hillo in Central District of California, Civil Action No. 2:19-cv-03028-JAK (AFMx); Plaintiffs' and Counterdefendants' litigation against Golabs and Walmart in Civil Action No. 3:19-CV-0754-N; and now in the instant litigation.

78.    Nonetheless, Plaintiffs and Counterdefendants filed this suit asserting infringement of the '036 and '107 patents with no reasonable basis for doing so and with no purpose other than to impermissibly extend the scope of the '036 and '107 patents with intended anticompetitive effect.

79.    Plaintiffs and Counterdefendants' assertion of the '036 and '107 patents was objectively baseless because no reasonable litigant could expect success on the merits.  Specifically, no

48

reasonable litigant could expect to successfully assert a patent that it knew was obtained through knowing, willful fraud on the USPTO and that it knew to be unenforceable and invalid.

80.    Upon information and belief, Plaintiffs and Counterdefendants' lawsuit is an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anticompetitive weapon with no regard to the outcome of the lawsuit. Rather, Plaintiffs and Counterdefendants' lawsuit has been brought solely to harass or interfere directly with Golabs's business relations through the assertion of fraudulently obtained patents and invalid patents in an attempt to force Golabs out of the hoverboard market.

81.    Plaintiffs and Counterdefendants' assertion that Golabs infringes the '036 and '107 patents constitutes sham litigation.  Through this sham litigation, and prior litigation and dealings with Amazon and Walmart asserting invalid, unenforceable and not infringed patents, Counterclaim-Defendants have engaged in anticompetitive or predatory conduct with the specific intent to monopolize in violation of 15 U.S.C. § 2.  As to the allegations contained in these Counterclaims, the relevant geographic market is the United States.

82.    There is a dangerous probability that Plaintiffs and Counterdefendants will achieve monopoly power in the hoverboard market.  Eliminating Golabs from the hoverboard market would remove one of the few remaining competitors in this market and assist Plaintiffs and Counterdefendants with achieving monopolistic power over the market.  This is especially true in light of Plaintiffs and Counterdefendants' current market position, prior settlement of litigations against major players Razor and Swagway and their pending lawsuits in this District, in the Central District of California and in the Northern District of Illinois to eliminate small players Golabs, Hillo and E-Link, respectively, from the hoverboard market.

83.    As a result of Plaintiffs and Counterdefendants' unlawful, anticompetitive acts, Golabs has suffered and will continue to suffer antitrust injury in an amount to be determined at trial.  Golabs has had to expend a substantial amount of resources defending this action, and will continue to do so if Plaintiffs and Counterdefendants continue to assert the fraudulently obtained '036 and '107 patents.

84.    As such, Golabs has suffered injury of the type forbidden under the antitrust laws of the United States.  Thus, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Golabs may assert a private right of action for actual and treble damages as well as reasonable attorneys' fees.

## SIXTH COUNTERCLAIM: DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 10,167,036

85.    Golabs incorporates by reference paragraphs 1 through 84 as though fully stated herein.

86.    Plaintiffs and Counterdefendants have asserted the '036 patent against Golabs.  Plaintiffs and Counterdefendants maintain, and Golabs denies, that Golabs's use, sale, offer for sale, marketing, or importation of Golabs's Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, Hoverfly XL, 654-2, and Remix hoverboards constitute infringement of at least Claim 8 of the '036 patent.

87.    There is an actual controversy between Golabs on the one hand, and Plaintiffs and Counterdefendants on the other, as to whether Golabs infringes Claim 8 of the '036 patent.

88.    Golabs has not infringed and does not infringe Claim 8 of the '036 patent.

89.    Claim 8 of the '036 patent recites, *inter alia*, a claim limitation of "an inner cover between the top cover and the bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other, the inner cover comprising a left edge and a right edge" and another claim limitation of "the rotating mechanism comprising a shaft sleeve installed in inner ends of the first inner cover and the second inner cover."

50

90.    The accused Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro, 654-2, and Remix hoverboards do not meet at least these claim limitations and thus do not infringe Claim 8 of the '036 patent, for at least the reasons that they each do not include an inner cover that is "a separate structural element that is not a part of the top cover or the bottom cover" as construed by the Court in Civil Action No. 3:19-CV-0754-N (Memorandum Opinion and Order (D.I. 134) at 10) and do not include a shaft sleeve installed in inner ends of a first inner cover and a second inner cover.

91.    The Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro hoverboards also do not infringe and have not infringed any claim of the '036 patent, including Claim 8, because the claims are invalid and/or unenforceable for inequitable conduct.  Golabs incorporates by reference as though fully stated herein paragraphs 49 through 89 of its Affirmative Defenses and their Eighth and Tenth Counterclaims that the '036 patent claims are invalid and unenforceable for inequitable conduct.

92.    Accordingly, Golabs seeks a judgment declaring that it does not infringe and has not infringed Claim 8 or any claim of the '036 patent.

### SEVENTH COUNTERCLAIM: DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 10,597,107

93.    Golabs incorporates by reference paragraphs 1 through 92 as though fully stated herein.

94.    Plaintiffs and Counterdefendants have asserted the '107 patent against Golabs.  Plaintiffs and Counterdefendants maintain, and Golabs denies, that Golabs's use, sale, offer for sale, marketing, or importation of Golabs's Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, Hoverfly XL, 654-2, and Remix hoverboards constitute infringement of Claim 8 of the '107 patent.

95.    There is an actual controversy between Golabs on the one hand, and  Plaintiffs and Counterdefendants on the other, as to whether Golabs infringes Claim 8 of the '107 patent.

96.    Golabs has not infringed and does not infringe Claim 8 of the '107 patent.

97.    Claim 8 of the '107 patent recites, *inter alia*, a claim limitation of "an inner cover positioned between the top cover and the bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other" and another limitation "a shaft sleeve installed in inner ends of the first inner cover and the second inner cover."

98.    The accused Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro, 654-2, and Remix hoverboards do not meet at least these claim limitations and thus do not infringe Claim 8 of the '107 patent, for at least the reasons that they each do not include an inner cover that is "a separate structural element that is not a part of the top cover or the bottom cover" as construed by the Court in Civil Action No. 3:19-CV-0754-N (Memorandum Opinion and Order (D.I. 134 at 10) and do not include a shaft sleeve installed in inner ends of a first inner cover and a second inner cover..

99.    The Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX, SRX Pro, 654-2, and Remix hoverboards also do not infringe and have not infringed any claim, including Claim 8, of the '107 patent because the claims are invalid and/or unenforceable for inequitable conduct.  Golabs incorporates by reference as though fully stated herein paragraphs 49 through 89 of their Affirmative Defenses and their Eighth, Ninth and Eleventh Counterclaims that the '107 patent claims are invalid and unenforceable for inequitable conduct.

100.  Accordingly, Golabs seeks a judgment declaring that they do not infringe and have not infringed Claim 8 or any claim of the '107 patent.

## EIGHTH COUNTERCLAIM: DECLARATORY JUDGMENT OF INVALIDITY Of U.S. PATENT NO. 10,167,036

101.  Golabs incorporates by reference paragraphs 1 through 100 as though fully stated herein.

102.  Plaintiffs and Counterdefendants maintain, and Golabs denies, that the claims of the '036 patent are valid.

103.  There is an actual controversy between Golabs on the one hand, and Plaintiffs and Counterdefendants on the other, as to the validity of the '036 patent.

104.  The '036 patent, and all of its claims, are invalid for failure to comply with one or more of the requirements of patentability set forth in Title 35 of the United States Code or the rules, regulations, and laws related thereto, including without limitation the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

105.  For example, all claims of the '036 patent are invalid as being at least rendered obvious by the "Hovertrax" sold by Shane Chen and his company Inventist, Inc. in the United States before the June 13, 2014 priority date of the '036 patent and publicly used by Shane Chen and Inventist more than one year before that date.

106.  As explained earlier, the Hovertrax was shown in a video posted on YouTube on February 10, 2013, regarding the 2013 Annual American International Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, referenced on Mr. Chen's Kickstarter webpage no later than May 4, 2013 (*see* https://www.kickstarter.com/projects/687658339/hovertrax/comments), and was sold before the June 13, 2014 priority date of the '036 patent.

107.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Chic's website at http://www.chic robot.com/index.php/news/info/54, Chic's Chair and General Manager, Jiawei Ying, who is listed as a co-inventor of the '155, '802 and D'723 patents, stated that Mr. Chen copied Chic's design in 2013.  Specifically, Mr. Ying claimed that Mr. Chen's product "originated from us [Chic]" in the same interview.  Indeed, the

Hovertrax contains virtually all of the claim limitations of Claim 1 of the '036 patent, and thus renders obvious at least claim 1 of the '036 patent, which has a priority date of June 13, 2014, more than a year after the Hovertrax was made public.

108.  Accordingly, Golabs seeks a judgment declaring that the '036 patent, and all of its claims, are invalid.

## NINTH COUNTERCLAIM: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,597,107

109.  Golabs incorporates by reference paragraphs 1 through 111 as though fully stated herein.

110.  Plaintiffs and Counterdefendants maintain, and Golabs denies, that the claims of the '107 patent are valid.

111.  There is an actual controversy between Golabs on the one hand, and Plaintiffs and Counterdefendants on the other, as to the validity of the '107 patent.

112.  The '107 patent, and all of its claims, are invalid for failure to comply with one or more of the requirements of patentability set forth in Title 35 of the United States Code or the rules, regulations, and laws related thereto, including without limitation the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

113.  For example, all claims of the '107 patent are invalid as being at least rendered obvious by the "Hovertrax" sold by Shane Chen and his company Inventist, Inc. in the United States before the June 13, 2014 priority date of the '107 patent and publicly used  by Shane Chen and Inventist more than one year before that date.

114.  As explained earlier, the Hovertrax was shown in a video posted on YouTube on February 10, 2013, regarding the 2013 Annual American International Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, and by reference on Mr. Chen's Kickstarter webpage       no       later       than       May       4,       2013       (*see*

https://www.kickstarter.com/projects/687658339/hovertrax/comments), and was sold before the June 13, 2014 priority date of the '107 patent.

115.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Chic's website at http://www.chic robot.com/index.php/news/info/54, Chic's Chair and General Manager, Jiawei Ying, who is listed as a co-inventor of the '155, '802 and D'723 patents, stated that Mr. Chen copied Chic's design in 2013.  Specifically, Mr. Ying claimed that Mr. Chen's product "was originated from us [Chic]" in the same interview.  Indeed, the Hovertrax contains virtually all of the claim limitations of Claim 1 of the '107 patent and thus renders obvious at least Claim 1 of the '107 patent, which has a priority date of June 13, 2014, more than a year after the Hovertrax was made public.

116.  Accordingly, Golabs seeks a judgment declaring that the '107 patent, and all of its claims, are invalid.

### TENTH COUNTERCLAIM: DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO. 10,167,036

117.  Golabs incorporates by reference paragraphs 1 through 116, and paragraphs 49 through 89 of their Third Affirmative Defense as though fully stated herein.

118.  Plaintiffs and Counterdefendants maintain, and Golabs denies, that the claims of the '036 patent are enforceable.

119.  There is an actual controversy between Golabs on the one hand, and Plaintiffs and Counterdefendants on the other, as to the enforceability of the '036 patent.

120.  The '036 patent is unenforceable under the doctrine of inequitable conduct because Mr. Ying committed fraud before the United States Patent and Trademark Office ("USPTO") during the prosecution of the '036 patent to obtain patent issuance.

121. During prosecution of the '036 application, Mr. Ying breached his duty of candor to the USPTO by: (1) misrepresenting the prior art; and (2) intentionally withholding material information regarding the Hovertrax.  The Patent Examiner would not have allowed the '036 application if he was aware of any of these three pieces of material information.

### MR. YING'S MISREPRESENTATIONS REGARDING THE PRIOR ART

101.    The '278 patent, among other things, claims a two-wheel, self-balancing vehicle with two foot placement sections that are "rotatably coupled."  Although the '278 patent was disclosed as prior art during prosecution of the '036 patent, the Related Art Section of the '036 patent specification only mentions existing electric balancing vehicles operating via a manually controlled steering rod.  Even though the '278 patent claims and discloses "rotatably coupled" foot placement sections, Mr. Ying falsely stated in the '036 patent application that the foot platforms of existing prior art balance vehicles "is always kept in a horizontal state during use and cannot rotate relatively" and "[t]herefore, the user cannot control the balance vehicle merely through the feet."  '036: Col. 1. lns. 30-38.  However, Mr. Ying knew that statement was not true, since he knew about Mr. Chen's hoverboard which did exactly that - it allowed relative rotation of the foot platforms permitting user control of the balance vehicle "merely through the feet," consistent with the disclosure in the '278 patent.

102.    The '278 patent also discloses wheels located at the left and right edges of the vehicle body, each including a "motorized hub assembly 117, 132 (shown in FIG. 2)."  '278: Col. 2, lns. 64-67.  Even though the '278 patent discloses wheels located at the left and right edges of the vehicle body, each including a hub motor,  Mr. Ying falsely stated in the '036 patent application:  "According to the present invention, the wheels are located at the left and right edges of the vehicle body.  Thus, the wheels with larger sizes can be used.  Compared to the existing

balance vehicle with wheels installed at the bottom of the bottom cover, the electric balance vehicle has considerable movement and speed advantages.  Further, the hub motors are adopted in the present invention, and the motors are directly installed in the wheels.  Accordingly, the structure of the electric balance vehicle is more compact.  Compared with the balance vehicle singly installed with a motor, more space is saved and the entire device is more compact." '036: Col. 3, lns. 26-37.  However, Mr. Ying knew that statement was not true, since he knew about Mr. Chen's hoverboard which included wheels located at the left and right edges of the vehicle body, each including a hub motor, consistent with the disclosure in the '278 patent.

103.    Mr. Ying's misrepresentations were material because the Examiner focused on the issue of the two platforms being "rotatable relative to each other" and "two wheels rotatably fixed at two sides of the inner cover" during prosecution of the '155 parent patent and he would not have allowed the patent otherwise.  Specifically, Kevin Hurley, Primary Examiner, Art Unit 3611, of the '155 patent application stated the following in the April 12, 2016 Examiner's Statement of Reasons for Allowance of the claims of the '155 patent application (emphasis added) (**Exhibit 1**):

> The reason for the allowance of claim 1 is that the prior art fails to disclose an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and ***rotatable relative to each other***; a rotating mechanism fixed between the first inner cover and the second inner cover; and ***two wheels rotatably fixed at two sides of the inner cover***, respectively.

But for Mr. Ying's misrepresentations, the '155 patent would not have issued, and for the same reasons, the '036 patent would not have issued.

104.    In addition to misrepresenting the prior art, during prosecution of the '036 patent application, Mr. Ying also breached his duty of candor to the USPTO by intentionally withholding material information by not disclosing the "Hovertrax" prototype during prosecution of the '036

patent.  The Patent Examiner would not have allowed the '036 patent application if he was aware of any of this material information.

## MR. YING'S OMISSION OF THE HOVERTRAX

### The Hovertrax Was Material To The Patentability Of The '036 Patent

105.    As explained above, Mr. Ying knew the Chen invention claims "rotatably-coupled" foot placement sections and wheels located at the left and right edges of the vehicle body, each including a hub motor, but falsely represented otherwise.  Compounding these misrepresentations was a failure to disclose any information regarding the Hovertrax during prosecution of the '036 patent, including information about the prototype Hovertrax hoverboards disclosed by Mr. Chen in 2012, 2013, and in connection with his Kickstarter campaign.

106.    Moreover, on information and belief, Mr. Ying and Hangzhou Chic studied the Hovertrax before the December 2, 2014 filing date of the parent PCT/CN2014/092849 application (and '155 patent application) of the asserted '036 and '107 patents (**Exhibits 7** (Tr. ) at 45:1-5, 67:19-68:3, 68:23-69:2, 74:15-75:6, 77:6-8, 80:3-11, 81:13-17; **Exhibit 8** at 6; **Exhibit 9**), and had continued communications with Mr. Chen regarding the Hovertrax while the parent PCT/CN2014/092849 application (and '155 patent application) was being prosecuted before the USPTO (**Exhibit 7** (Tr.) at 84:9-15, 84:25-86:9, 87:25-88:8, 88:13-89:23, 90:11-24).

107.    Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair.  After receiving interest in the Hovertrax, Mr. Chen launched a Kickstarter campaign in April 2013 to raise funding to further develop and to commercialize the Hovertrax.

108.    This timeline is supported by a video posted on YouTube on February 10, 2013, regarding the 2013 Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, and the timeline on Mr. Chen's Kickstarter webpage, at:

https://www.kickstarter.com/projects/687658339/hovertrax/updates.    Mr. Chen's Kickstarter webpage shows the Hovertrax prototype as follows:



109.    Mr. Chen's Kickstarter page also contains a 2013 video of the Hovertrax prototype in use, at https://www.kickstarter.com/projects/687658339/hovertrax/description.

110.    The Hovertrax prototype embodies all of the elements claimed in the '278 patent and virtually all of the elements claimed in the '036 patent.  Like the claims of the '278 and '036 patents, the Hovertrax is comprised of two independently movable foot platforms rotatable relative to each other, a top cover comprising a first top cover and second top cover disposed symmetrically and rotatable relative to each other, a bottom cover fixed to the top cover and comprising a first bottom cover and a second bottom cover disposed symmetrically and rotatable relative to each other, an internal frame comprising a first internal frame and a second internal frame disposed symmetrically and rotatable relative to each other, a rotating mechanism fixed between the first internal frame and the second internal frame, wheels located on the left and right edges of the

vehicle body, including a hub motor in each wheel, a plurality of sensors, a power supply and a control system that controls the hub motors to drive the corresponding wheels to rotate according to sending signals transmitted by the sensors.

111.    The Hovertrax Kickstarter webpage has prominently displayed photos, video, schematics, and a narrative description of the Hovertrax prototype, as seen at https://www.kickstarter.com/projects/687658339/hovertrax/description. This webpage originated in and is accessible in the United States. Thus, these photographs, videos, and schematics constitute a public display of the prototype in the United States. Attached as **Exhibit 6** is a screenshot of the Hovertrax Kickstarter webpage as it appeared on May 4, 2013.

112.    Mr. Chen's Kickstarter page shows a computer aided design of the Hovertrax while in development as follows:



113.    The webpage also displays a 3D rendering of the Hovertrax as follows:



114.    These images, which have been available on the webpage since 2013, show that the Hovertrax prototype contains an internal frame comprising a first internal frame and a second internal frame disposed symmetrically and rotatable relative to each other ; a rotating mechanism fixed between the first internal frame and the second internal frame; and two wheels rotatably fixed at two sides of the internal frame, respectively.



115.    An analysis of the Hovertrax sold prior to the June 13, 2014 priority date of the '036 patent establishes that it includes an internal framework, comprising a first internal frame and a second internal frame rotatable relative to each other having a combination of metallic parts and plastic parts molded to the top and bottom covers.  The Hovertrax satisfies virtually all of the limitations of the independent claims of the '036 patent.  *See* **Exhibit 10**.  Plaintiffs' expert agrees that, applying his claim constructions, virtually all of the limitations of the independent claims of the '155 and '802 patents are met by the Hovertrax.  **Exhibit 11** (Tr.) at 117:18-24, 118:13-119:18, 120:13-123:4, 123:19-21, 124:24-125:21, 126:15-128:6, 128:20-23, 129:9-130:4, 131:7-132:5, 132:24-133:4.

116.    The Hovertrax is not cumulative to any reference, including the '278 patent, disclosed during prosecution of the '036 patent.  If disclosed during prosecution of the '036 patent, the Hovertrax would have been the only hoverboard product disclosed.  Moreover, the Hovertrax includes two platforms that can rotate relative to each other and the user can control the balance of the Hovertrax merely through their feet.  This is directly contrary to how Mr. Ying represented

the existing balance vehicles were configured and functioned in the '036 patent: "The foot platform of the existing balance vehicle is generally a flat plate, and the foot platform is always kept in a horizontal state during use and cannot rotate relatively. Therefore, the user cannot control the balance vehicle merely through the feet." '036: Col. 1, lns. 34-38. In addition, Hovertrax has two wheels rotatably fixed at the left and right edges of the vehicle body, including a hub motor within each wheel. This directly contradicts Mr. Ying's representation in the specification of the '036 patent that prior art hoverboards lacked these features. '036: Col. 3, lns. 26-38.

117.    Furthermore, Hovertrax includes a first and second top cover, a first and second bottom cover and a first and second internal frame rotatable relative to each other. **Exhibit 11** (Tr.) at 118:25-119:16, 122:10-14. The internal frame of the Hovertrax also includes additional details, not disclosed in the '278 patent, showing how the electronic elements inside the vehicle body are protected by the internal framework and "a space for fixing the electronic elements is formed between" the internal framework and the top and bottom covers consistent with the benefits provided by the inner cover disclosed in the '036 patent. '036: Col. 3, lns. 13-21.

### Mr. Ying's Failure To Disclose The Hovertrax Was But-For Material To The Patentability Of The '036 Patent

118.    These features of the Hovertrax are material because the very basis for Examiner Hurley's determination that the '155 application was patentable over the prior art was the incorrect belief that the prior art did not contain the "inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively." Had Mr. Ying disclosed the Hovertrax, the Examiner would have seen that a product in public use and on sale before the priority date of the asserted patents included an internal frame comprising a first internal frame and a second internal frame rotatable

relative to each other, a rotating mechanism fixed between the first internal frame and the second internal frame and two wheels rotatably fixed at two sides of the internal frame, respectively.  As a result, the Examiner would have denied the '036 application as at least obvious over the prior art.  But for Mr. Ying's failure to disclose the Hovertrax product, the Examiner would not have issued the '036 patent.  Judge Klausner's Order (**Exhibit 3**) (The Hovertrax "is but for material.")

119.    The Hovertrax prototype is not cumulative of the '278 patent because it provides additional detail.  Even though the prototype practices the '278 patent, it also contains the internal frame features described above which are not explicitly disclosed in the '278 patent.  This non-cumulative portion of the Hovertrax is therefore material.  Judge Klausner's Order (**Exhibit 3**) (The Hovertrax "is not cumulative.")

### Mr. Ying Knew Of The Material Omission Of The Hovertrax

120.    Mr. Ying knew of the Hovertrax and the material information contained therein before the '036 patent issued.  Judge Klausner Order (**Exhibit 3**) ("it is plausible that Ying knew about the Kickstarter information"; "Ying plausibly had knowledge of the Hovertrax by the time he filed the CN application").   Mr. Chen (along with his licensee Razor) filed a First Amended Complaint against Hangzhou Chic and other respondents with the United States International Trade Commission ("ITC") in Inv. No. 337-TA-1000, *Certain Motorized Self-Balancing Vehicles* ("ITC 1000"), on March 21, 2016.  Paragraph 56 of the First Amended Complaint states:

> Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair.  After receiving significant interest in the Hovertrax at the New York Toy Fair, Mr. Chen and Inventist launched a Kickstarter campaign in April 2013 to raise funding to support the further development and commercialization of the Hovertrax.

121.   Mr. Ying was aware of this allegation as demonstrated by the fact that he verified Hangzhou Chic's response to the ITC First Amended Complaint on June 15, 2016 before issuance of the '036 patent while he still had a duty to disclose material information to the USPTO.

122.   Mr. Ying was aware of the Hovertrax Kickstarter page and the Hovertrax prototype. The Kickstarter page clearly shows that the Hovertrax prototype contains features similar to those accused of infringement in this case, including what Hangzhou Chic has characterized as an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover.

123.   Mr. Ying was also familiar with Mr. Chen's Hovertrax product independently of the ITC First Amended Complaint.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Chic's website at http://www.chic-robot.com/index.php/news/info/54, Mr. Ying stated that he believed Mr. Chen copied Chic's design in 2013 (which was before Mr. Ying filed his own application and after Mr. Chen filed his application).  Specifically, Mr. Ying claimed, based on a translation, that Mr. Chen's product "originated from us [Hangzhou Chic]." Thus, Mr. Ying was familiar with Mr. Chen's Hovertrax and recognized that it contained the same features as in the '036 application.

124.   Moreover, on information and belief, Mr. Ying and Hangzhou Chic studied the Hovertrax before the December 2, 2014 filing date of the parent PCT/CN2014/092849 application (and '155 patent application) of the asserted '036 and '107 patents (**Exhibits 7** (Tr.) at 45:1-5, 67:19-68:3, 68:23-69:2, 74:15-75:6, 77:6-8, 80:3-11, 81:13-17; **Exhibit 8** at 6; **Exhibit 9**), and had continued communications with Mr. Chen regarding the Hovertrax while the parent

PCT/CN2014/092849 application (and '155 patent application) was being prosecuted before the USPTO (**Exhibit 7** (Tr.) at 84:9-15, 84:25-86:9, 87:25-88:8, 88:13-89:23, 90:11-24).  Mr. Ying and Mr. Chen were not strangers; nor was the Hovertrax and its materiality unknown to Mr. Ying.

### Mr. Ying's Omission Of The Hovertrax During Prosecution Of The '036 Patent Was Made With The Intent To Deceive The USPTO

125.    On information and belief, despite studying the Hovertrax before the December 2, 2014 filing date of the parent PCT/CN2014/092849 application (and '155 patent application), and being aware of the structure, function and operation of the Hovertrax, Mr. Ying did not disclose the Hovertrax to any of the attorneys involved in prosecution of the '155 and '802 patents, and the same omission occurred during prosecution of asserted '036 patent.  *See* **Exhibit 7** (Tr.) at 45:1-5, 67:19-68:3, 68:23-69:2, 74:15-75:6, 77:6-8, 80:3-11, 81:13-17, 84:9-15, 84:25-86:9, 87:25-88:8, 88:13-89:23, 90:11-24).

126.    Even though Mr. Ying was aware of Mr. Chen's Hovertrax and its public use and sale in the United States, he failed to disclose it to the USPTO during prosecution of the '036 patent.  Mr. Ying was aware, as of April 12, 2016, that the patentability of the '155 patent was reliant on the Examiner's conclusion that the prior art failed to disclose "the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively."

127.    Once Mr. Ying became aware of the Hovertrax, he would have easily been able to recognize that disclosing the Hovertrax would preclude Chic from securing the '036 patent.  As a result, Mr. Ying deliberately chose not to disclose the Hovertrax and allowed the Examiner to base his determination on incomplete information.  Mr. Ying's affirmative misrepresentation of the prior art further demonstrates Mr. Ying's intent to deceive the USPTO.

122.    Accordingly, Golabs seeks a judgment declaring that the '036 patent is unenforceable due to inequitable conduct.  Golabs reserves the right to seek attorneys' fees and costs against Plaintiffs and Counterdefendants for asserting the fraudulently obtained patents in this lawsuit in bad faith.

## ELEVENTH COUNTERCLAIM: DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO. 10,597,107

123.  Golabs incorporates by reference paragraphs 1 through 122 and paragraphs 49 through 89 of their Third Affirmative Defense as though fully stated herein.

124.  Plaintiffs and Counterdefendants maintain, and Golabs denies, that the claims of the '107 patent are enforceable.

125.  There is an actual controversy between Golabs on the one hand, and Plaintiffs and Counterdefendants on the other, as to the enforceability of the '107 patent.

126.  The application that issued as the '107 patent ("the '107 application") is a continuation of '155 application, names the same inventors Messrs. Ying and Cao as the '155 application, includes the same prosecution history as the '155 application, and claims priority to the same CN '353 application.  Because the '107 application is a continuation of the '155 application, the '107 patent is unenforceable under the same grounds of inequitable conduct that apply to the parent '155 patent under the doctrine of infectious unenforceability.  *See, e.g.*, *Nilssen v. Osram Sylvania,* 504 F.3d 1223 (Fed. Cir. 2007) (inequitable conduct with respect to one or more patents in a family can infect related applications).  The '107 patent is unenforceable for the same reasons discussed in connection with Golabs's and Walmart's Twelfth Counterclaim – Declaratory Judgment of Unenforceability of U.S. Patent No. 9,376,155 in Civil Action No. 3:19-CV-0754-N, and in paragraphs 49 through 89 of Third Affirmative Defense, incorporated herein by reference.

127.  In addition, as previously addresses, the Hovertrax Kickstarter Website Archive, Guide and Manual and YouTube video (Non-Patent Literature References 4, 5 and 12) were disclosed in an

IDS submitted by Applicants during the later prosecution of the '107 continuation patent buried among 151 references, many in the Chinese language, confirming this information should have been disclosed in the earlier prosecution of the '155 and '036 patents.  Even with respect to the '107 patent, this disclosure did not satisfy the Applicants' duty of candor, because the Applicants did not disclose to the Examiner, pursuant to MPEP §2001.06(c), that the subject matter for which the '107 patent was being sought is the subject of litigation in Civil Action No. 3:19-CV-0754-N, and also did not disclose any of the extensive briefing, contentions, and claim charts comparing the asserted claims to the Hovertrax that were disclosed in that litigation.  Had the foregoing information been disclosed to the Examiner, the Examiner would not have allowed the claims of the '107 patent.

128.   Accordingly, Golabs seeks a judgment declaring that the '107 patent is unenforceable due to inequitable conduct.  Golabs reserves the right to seek attorneys' fees and costs against Plaintiffs and Counterdefendants for asserting the fraudulently obtained patents in this lawsuit in bad faith.

## PRAYER FOR RELIEF

WHEREFORE, Golabs and Walmart pray that this Court:

A.  Dismiss Plaintiffs' and Counterdefendants' Complaint against Golabs and Walmart with prejudice;

B.  Hold that Plaintiffs and Counterdefendants are not entitled to any relief, whether in law or equity or otherwise, from their suit against Golabs and Walmart;

C.  Declare that Golabs and Walmart have not infringed and do not infringe any claim of the '036 and '107 patents;

D.  Declare that the asserted claims of the '036 and '107 patents are invalid;

E.  Declare that the '036 and '107 patents are unenforceable due to inequitable conduct;

F.  Permanently enjoin Plaintiffs and Counterdefendants, their successors and assigns, and anyone acting in concert therewith or on their behalf, from attempting to enforce the '036 and '107  patents against Golabs and Walmart, or any parents, affiliates, or subsidiaries of Golabs and Walmart, as well as their respective officers, agents, employees, successors, and assigns;

G.  An award to Golabs and Walmart of compensatory damages and treble damages as provided by law;

H.  Disgorgement of Plaintiffs' and Counterdefendants' revenues or profits obtained by Plaintiffs and Counterdefendants as a result of Plaintiffs' and Counterdefendants' misconduct;

I.  Injunctive and other equitable relief requiring  Plaintiffs and Counterdefendants to take all necessary steps (1) to prevent further misrepresentations by Plaintiffs and Counterdefendants and any agents acting on their behalf, including but not limited to the misrepresentations to Amazon identified in the First through Third Counterclaims; (2) to correct any and all such misrepresentations already made; and (3) to prevent further harm to Golabs and Walmart as a result of Plaintiffs' and Counterdefendants' misconduct;

J.  Enter an order finding that this case is exceptional and awarding Golabs and Walmart their respective costs and expenses, including reasonable attorneys' fees, in accordance with the provisions of 35 U.S.C. § 285 or other statutes; and

K.  Award Golabs and Walmart any other relief, in law or in equity, to which the Court finds Golabs and Walmart are justly entitled.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Golabs and Walmart hereby demand a trial by jury on all issues that are triable of right to a jury in this action.

Dated: September 8, 2020               Respectfully submitted,

By: */s/ Joel C. Lin*
Tony Pezzano
New York Bar No. 2315547
*Pro Hac Vice Application Forthcoming*
Joel C. Lin
New York Bar No. 2079945
*Admitted Pro Hac Vice*
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Fax: (212) 335-4501
tony.pezzano@us.dlapiper.com
joel.lin@us.dlapiper.com

William Chu
Texas Bar No. 04241000
wmchulaw@aol.com
William Knisley
Texas Bar No. 24095728
knisley.wmchulaw@gmail.com
LAW OFFICES OF WILLIAM CHU
4455 LBJ Freeway, Suite. 1008
Dallas Texas, 75244
(Tel) 972-392-9888
(Fax) 972-392-9889

**ATTORNEYS FOR DEFENDANTS GOLABS, INC. d/b/a GOTRAX, WAL-MART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record on September 8, 2020 via the Court's ECF system, pursuant to the Federal Rules of Civil Procedure.

*/s/ Joel C. Lin*_____

Joel C. Lin